## MARY SCHMITT v. JOHN ESSER.[1]

June 28, 1929.

No. 27,286.

*Frankberg, Berghuis & Frankberg,* for appellant.
*Mark & Barron,* for respondent.

HOLT, J.

A demurrer to the amended complaint was overruled, but the question presented was certified as important and doubtful. Defendant appeals.

The action is for malpractice. Plaintiff alleges that on March 5, 1926, she employed defendant, a duly licensed physician and surgeon, to set, adjust, care for and heal plaintiff's right ankle, which was then broken and dislocated; that he undertook so to do, treating for the injury from March 5, 1926, to July 1, 1926, and representing that because of the peculiar injuries they would not heal completely for two years after the treatment was finished; that defendant so negligently and unskilfully conducted himself in such employment that the fracture never set, the dislocation was never reduced, and the bones in the ankle did not unite; that he failed to take proper

[1]Reported in 226 N. W. 196.

X-ray pictures of the injuries at any time during the treatment and after the cast was removed; that plaintiff had confidence in defendant, followed his instructions, and believed his statements; that to conceal his negligent treatment defendant falsely and fraudulently stated to plaintiff at all times during the treatment that the fracture was one which from its nature required two years' time in which to heal after the fractured bones were set and the dislocation reduced; that the statements were false, known by defendant to be false, and were made to deceive plaintiff; and that plaintiff did not discover their falsity until June 1, 1928; wherefore damages are sought. The demurrer was on the ground that the complaint disclosed the action was barred. The summons was served June 5, 1928. Two questions are presented: (1) Is the cause of action barred by the statute of limitations? (2) Do the allegations of fraud suspend the operation of the statute?

In the cure of a fracture there is not only the act of setting the bones, that is, bringing the broken ends into juxtaposition, but also so keeping them by splints or casts until nature unites the fracture. There is a tendency for the ends to overlap because of muscle tension. And it is common knowledge that, to counteract this tension, it is often necessary to resort to the use of weights and mechanical contrivances which may need constant attention and adjustment. Change of casts may also be necessary at intervals. So that, even if the ends of the bones were brought into perfect apposition by the first treatment, days or perhaps weeks thereafter they might slip out of place through some mishap or because of fault of the surgeon or nurse in the management of the cast, weights, or mechanical contrivances. It is also true that a surgeon employed in a case of fracture may find conditions such that it is inadvisable immediately to reduce. Because of swelling and laceration the so-called setting may have to be delayed for days. Again, cases are not unknown where with the utmost skill and care either no union has formed or has resulted so badly that a surgical operation is necessary in order to effect a cure. Such operation is part of the treatment necessitated not by any previous neglect or failure to use

proper skill, but arising from some condition or cause for which the surgeon is not responsible.

In malpractice cases there is of course difficulty in determining the precise moment when the act or omission which caused the damage took place. The neglectful or unskilful act may occur at some particular moment in months of attendance upon the patient or it may persist and characterize the whole treatment. Therefore it would seem advisable not to apply the bar of the statute on demurrer unless it clearly appears from the complaint that the unskilful or negligent act which caused the injury took place at a date more than two years before the action was brought. It is true that if there be but a single act of malpractice subsequent time and effort merely to remedy or cure that act could not toll the running of the statute. This is applicable to a case of a radium burn. Ogg v. Robb, 181 Iowa, 145, 162 N. W. 217, L. R. A. 1918C, 981; Furgason v. Bellaire, 197 Iowa, 277, 197 N. W. 13.

Appellant relies on California decisions, that where the malpractice charged is failure properly to reduce bone fracture a demurrer is properly sustained to a complaint which shows that between the date the fracture was set or reduced and the service of the summons the statute of limitations had run. Harding v. Liberty Hospital Corp. 177 Cal. 520, 171 P. 98; Marty v. Somers, 35 Cal. App. 182, 169 P. 411. Hahn v. Claybrook, 130 Md. 179, 100 A. 83, L. R. A. 1917C, 1169, is also cited by appellant, but there a trial was had from which it clearly appeared that the statute of limitations had run between the last treatment and the commencement of the action. So in Fadden v. Satterlee (C. C.) 43 F. 568, the demurrer was sustained because the statute had run after the date of the last treatment alleged in the complaint.

In Lotten v. O'Brien, 146 Wis. 258, 259, 131 N. W. 361, the judgment was reversed because it appeared that the statute had run between the time the surgeon ceased to treat the fracture and the commncement of the action, the court saying:

"The statute of limitations began to run when the cause of action accrued, and this accrued when the negligent acts were committed

without reference to the time of discharge. The real negligent act which caused the injury to plaintiff was the improper setting of the bones in his arm. The negligent omission to discover this occurred at such dates and times as the defendant undertook to examine, treat, and care for the disabled arm."

This language appears to express the thought that so long as the doctor continues the treatment so unskilfully and negligently that he fails to discover the condition brought about by a prior unskilful and negligent act he is not in position to urge that the statute of limitations has started to run. Coady v. Reins, 1 Mont. 424, 427, on its facts, was the same as Lotten v. O'Brien, 146 Wis. 258, 131 N. W. 361, but this statement, not necessary to a decision, was therein made, upon which appellant relies:

"The gist of the action in this instance is the negligence and un-skillfulness, or breach of duty as laid in the complaint, and not the injury or damage consequent thereon. * * * But the statute in cases of this nature begins to run, regardless of the form of action, whether case or assumpsit, from the time of the negligence or breach of duty."

The courts of Ohio have given repeated consideration to the question as to when the cause of action in a malpractice case accrues. In the first instance the court was evenly divided, each side represented by able opinions, Gillette v. Tucker, 67 Ohio St. 106, 65 N. E. 865, 93 A. S. R. 639. Then followed a case wherein was adopted Justice Davis' opinion in the case cited, holding in accord with California courts, that the statute commenced to run when the fracture was negligently or unskilfully reduced and that subsequent negligent treatment would not serve to toll the statute. McArthur v. Bowers; 72 Ohio St. 656, 76 N. E. 1128. But later this ruling was reversed, Bowers v. Santee, 99 Ohio St. 361, 124 N. E. 238, wherein it is held that a contract relation exists between a patient and his physician whereby the latter is to use the average skill and care exercised by members of the same profession in effecting a cure, and in an action for breach of that contract the statute of

limitations does not begin to run until the relation terminates. There is much force in that position. The court there said [p. 367]:

"The law should not require impossible or unreasonable things. It should not impose upon the patient a duty that he can only know through expert knowledge which he does not possess, but as to which he is compelled to accept the judgment of his physician or surgeon. In this particular case the patient could not know just when the initial trouble occurred that resulted in the alleged mistreatment. True she could know when the fracture occurred, but the surgeon was not responsible for that. Whatever responsibility he had was in connection with the treatment. The treatment did not include merely the immediate and isolated resetting or reduction or adjustment, but manifestly the subsequent care and treatment by the surgeon was as essential to full recovery and restoration of usefulness as was the initial setting. * * * Moreover, it is clearly just to the surgeon that he be not harassed by any premature litigation instituted in order to save the right of the patient in the event that there be substantial malpractice. The surgeon should have all reasonable time and opportunity to correct the evils which made the operation or treatment necessary, and even reasonable time and opportunity to correct the ordinary and usual mistakes incident to even skilled surgery. The doctrine announced here is conducive to that mutual confidence that is highly essential in the relation between surgeon and patient."

We think the treatment and employment should be considered as a whole, and if there occurred therein malpractice the statute of limitations begins to run when the treatment ceases.

In view of this conclusion the demurrer was properly overruled, and it is not necessary to consider the second question whether the allegations of defendant's fraud tolled the statute.

The order is affirmed.