CONRAD JOHNSON AND ANOTHER v. WINTHROP LABORATORIES DIVISION OF STERLING DRUG, INC., AND OTHERS.
DR. FRANCIS W. LYNCH AND OTHERS, RESPONDENTS.

190 N. W. (2d) 77.

August 27, 1971—No. 42509.

*John A. McEachron, Jr.* and *David W. Thurston,* for appellants.

*Altman, Geraghty, Leonard & Mulally, J. H. Geraghty,* and *Terence O'Loughlin,* for respondents Schmidtke and Sterner.

*Dorsey, Marquart, Windhorst, West & Halladay, Henry Halladay, James H. O'Hagan, Jan D. Stuurmans,* and *James L. Murphy,* for respondent Lynch.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Kelly, JJ.

NELSON, JUSTICE.

Appeal by plaintiffs, Conrad Johnson and Lorraine Johnson, from summary judgments in favor of defendant physicians, Donald C. Sterner, R. L. Schmidtke, and Francis W. Lynch.

In their action plaintiffs alleged medical malpractice against defendants Sterner, Schmidtke, and Lynch based on their treatment of Lorraine Johnson, which treatment allegedly caused injury to her eyesight. The suit was commenced against the physicians on November 27 and 29, 1968. On January 8, 1970, the trial court made its order granting their motions for summary judgment.

The relevant facts are as follows: From 1954 to 1966 Lorraine Johnson took a brand of chloroquine, labeled by the manufacturer "Aralen," for treatment of a skin condition diagnosed as lupus erythematosus. Plaintiffs contend that as a result of taking

this drug Mrs. Johnson has suffered a loss of vision. They claim the physicians should have discovered or warned plaintiffs that Mrs. Johnson's ingestion of chloroquine might cause damage to her eyesight. The visual difficulty of which Mrs. Johnson complains was first noticed by her in 1960, at which time it was "very minor." The problem seemed to be "getting a little worse" in 1962, and she claimed that in 1963 her vision was "to the point where * * * I couldn't recognize people."

Drs. Sterner and Schmidtke, both medical doctors licensed in Minnesota, practice separately as specialists in ophthalmology, the field of medicine concerned with treating eye diseases. Mrs. Johnson consulted Dr. Sterner on three occasions, the last being April 26, 1960. She consulted Dr. Schmidtke on only two occasions, the latter being October 10, 1963. She terminated the services of Dr. Sterner and Dr. Schmidtke as of the above dates. In her deposition testimony, Mrs. Johnson said that she was not happy with the eyeglasses each had prescribed and therefore decided to consult another ophthalmologist.

Dr. Lynch, a physician specializing in dermatology, first saw Mrs. Johnson for her skin condition on May 6, 1954. He thereafter treated her periodically in 1954, 1955, and 1956, prescribing chloroquine (Aralen). Mrs. Johnson was seen twice in 1957 in Dr. Lynch's office, the first time on January 24 by an associate of Dr. Lynch, and the other time by Dr. Lynch on November 7, 1957. Mrs. Johnson was not seen again by Dr. Lynch or any associate of his until December 15, 1959. Dr. Lynch spoke to Mrs. Johnson on the phone once and saw her once in 1960, and she was seen by an associate in 1960. In 1961 Mrs. Johnson called Dr. Lynch's office but made no personal visit. Dr. Lynch did not see her again until March 1964, during which month he saw her twice and talked with her by telephone three times. He advised Mrs. Johnson on March 9, 1964, to stop taking chloroquine. During a final telephone consultation on March 23, 1964, Dr. Lynch advised Mrs. Johnson to consult her family physician, Dr. Ver-

non L. Sommerdorf. At that time, Dr. Lynch noted on his chart, "Ret. [Returned] to care of Dr. Sommerdorf."

Mrs. Johnson saw Dr. Cora Ruhr, an optometrist, for the first time during the early fall of 1966 at which time Mrs. Johnson requested glasses. She admitted that after she received her glasses she called Dr. Ruhr and complained that she could not see clearly. Dr. Ruhr at that time told Mrs. Johnson that the problem with her eyesight was caused by chloroquine or something else.

■ One legal issue raised by plaintiffs' appeal is whether the 2-year statute of limitations against medical malpractice actions created by Minn. St. 541.07(1) commences to run when the physician's medical treatment ceases.

Minn. St. 541.01 and 541.07 establish the statutory limitation period governing medical malpractice claims. Section 541.01 provides in pertinent part:

"Actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues, * * *."

Section 541.07 provides in pertinent part:

"Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within two years:

"(1)   For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury, and all actions against physicians, surgeons, dentists, hospitals, sanatoriums, for malpractice, error, mistake or failure to cure, whether based on contract or tort; * * *."

Plaintiffs contend that the 2-year statute of limitations in § 541.07(1) started to run when Mrs. Johnson first discovered her injury, or, by the exercise of reasonable diligence, should have discovered it. As stated above, Mrs. Johnson first noticed a loss of vision in 1960, and was advised of the possible connection that might exist between her loss of vision and her taking of chloroquine in September or October of 1966 by Dr. Ruhr.

This argument has been made before, but we have consistently rejected it, holding that the medical malpractice statute of limitations begins to run when the physician's medical treatment for the particular condition ceases. The leading case on the question of when the statute of limitations begins to run on a medical malpractice claim against a physician is Schmit v. Esser, 183 Minn. 354, 236 N. W. 622, 74 A. L. R. 1312. There, we reaffirmed the rule, announced in an earlier case involving the same parties, 178 Minn. 82, 226 N. W. 196, that the 2-year statutory period commences to run when the treatment ceases. We said in the second Schmit case (183 Minn. 357, 236 N. W. 624, 74 A. L. R. 1315):

"From the plaintiff's testimony and the evidence as a whole, the jury could find that defendant was employed generally to treat, care for, and heal the fracture; that such employment continued through July and August, 1926; and that he failed in his duty and was negligent in failing to apply proper treatment after his examination of the foot in July and August. Where the physician is employed generally to treat and heal an injury, he owes the duty of giving continued care and treatment. Nelson v. Farrish, 143 Minn. 368, 173 N. W. 715. If, then, the jury found that the defendant, under his general contract of employment, was negligent in failing to apply proper treatment in July and August, 1926, this action, commenced on June 5, 1928, would not be barred.

"In the opinion on the former appeal, 178 Minn. 82, 226 N. W. 196, 197, the case of Bowers v. Santee, 99 Ohio St. 361, 124 N. E. 238, is cited with approval, wherein it was held that where the physician is employed generally to treat and effect a cure his duty continues until the relation terminates; that the treatment does not include merely the immediate and isolated resetting or reduction or adjustment of a fracture or dislocation, but all subsequent care and treatment essential to recovery. The conclusion reached by this court was stated as follows [178 Minn. 86]:

" 'We think the treatment and employment should be consid-

ered as a whole, and if there occurred therein malpractice the statute of limitations begins to run when the treatment ceases.'

\* \* \* \* \*

"When does the treatment cease? So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his employment. If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality."

The rule set forth in the Schmit decisions—that the event which starts the period of limitation running against a medical malpractice action is the termination of treatment—has been reconsidered and followed in Plotnik v. Lewis, 195 Minn. 130, 261 N. W. 867, and Couillard v. Charles T. Miller Hospital, Inc. 253 Minn. 418, 92 N. W. (2d) 96. We stated in Swang v. Hauser, 288 Minn. 306, 309, 180 N. W. (2d) 187, 189:

"\* \* \* A policy reason [for the rule] is that the patient must repose reliance upon his physician in the completion of the course of curative treatment, a relationship of trust which inhibits the patient's ability to discover acts of omission or commission constituting malpractice."

■ Before the general rule was reaffirmed in the second Schmit case, this court held in Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633, that if a physician prevents a patient from discovering a cause of action against the physician by fraudulent concealment, the statute of limitations will be tolled until the cause of action is discovered by the patient or, in the exercise of reasonable diligence, should have been discovered by him. But

we were careful in Schmucking to confine the rule of that decision to cases of "fraudulent concealment," and we stressed that we were not adopting as a general rule the so-called "discovery rule" urged by plaintiffs herein. Thus, in the absence of fraud, ignorance of the existence of the cause of action does not toll the statute of limitations. 183 Minn. 39, 235 N. W. 633.

■ Courts have no power to extend or modify statutory limitation periods. Humphrey v. Carpenter, 39 Minn. 115, 39 N. W. 67. Chapter 541 itself sets forth specific conduct or circumstances which will toll the running of the limitation periods. The legislature has not seen fit to provide a statutory tolling period to protect plaintiffs from their own ignorance although we held many years ago that such ignorance does not toll statutes of limitations. See, Weston v. Jones, 160 Minn. 32, 199 N. W. 431.

Applying the general rule to the present case, plaintiffs' action against Drs. Sterner and Schmidtke is clearly barred. It will be noted that Drs. Sterner and Schmidtke last treated Mrs. Johnson on April 26, 1960, and October 10, 1963, respectively. Their services were terminated by Mrs. Johnson herself, who was unhappy with glasses they prescribed and decided to consult another ophthalmologist.

■ The other issue raised by plaintiffs is whether the record presents a fact question concerning whether Dr. Lynch's treatment of Mrs. Johnson ceased within 2 years of the commencement of the action. They contend the court erred in granting Dr. Lynch's motion for summary judgment.

Summary judgment is proper where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Rule 56, Rules of Civil Procedure. The trial court held that there is no genuine issue as to when Dr. Lynch's treatment of Mrs. Johnson ceased for the purposes of this action, and we must agree.

Neither Dr. Lynch nor any of his associates saw or heard from Mrs. Johnson from March 23, 1964, until January 6, 1967, when Dr. Lynch received a telephone call from a Dr. Donald Herrick,

an ophthalmologist, who said he had seen Mrs. Johnson in October and December of 1966, had diagnosed her condition as retinopathy, and had instructed her to stop taking chloroquine. Later that same day Dr. Lynch saw Mrs. Johnson; he saw her two more times in 1967, once in November and once in December, and he spoke to her on the phone twice in November. He continued to see her irregularly in 1968, up to November 15, just 12 days before he was served with the summons and complaint in this lawsuit. It is clear, however, that under the Schmit rule plaintiffs' claim against Dr. Lynch accrued when his treatment of Mrs. Johnson ceased on March 23, 1964, and she was returned to the care of Dr. Sommerdorf. Dr. Lynch testified that on March 9, 1964, he advised Mrs. Johnson to discontinue taking chloroquine. Mrs. Johnson testified in her deposition that Dr. Lynch's female associate told her she could go back to chloroquine in 1961. She attempted to take a new position in her affidavit opposing defendants' motions for summary judgment, stating that the visit with the woman associate occurred after March 9, 1964. Under any version of the facts, all of which are consistent with the exception of Mrs. Johnson's own conflicting testimony, Dr. Lynch's testimony that treatment ceased on March 23, 1964, appears to stand undisputed. It would appear that plaintiffs are attempting to impose liability upon Dr. Lynch for the effects of chloroquine purchased by Mrs. Johnson of her own volition and without treatment or examination by Dr. Lynch. No authority has been cited in support of this theory, and the recent case of Fleishman v. Richardson-Merrell, Inc. 94 N. J. Super. 90, 226 A. (2d) 843, flatly rejected it. In a case strikingly similar to the case at bar, the court reasoned in Fleishman (94 N. J. Super. 94, 226 A. [2d] 845):

"This defendant had the duty of following up the plaintiff's progress while she was consulting him and while she was taking the drug pursuant to his prescription. At the latest, this duty would have terminated shortly after her last visit to the defendant's office in July 1960.

"She continued to take the drug after that time, not as a part of his treatment or under the defendant's prescription, but of her own volition and by her own procurement. He had no duty to continue to follow her progress after the prescription expired because she had left his treatment and he had no knowledge she was continuing to use the drug, or reason to know of it. It was conceded that she was not under defendant's supervision or care after July 1960. She herself dispensed with the physician's services and thus terminated the physician-patient relationship many months before December when it first became known that the prolonged use of the drug could have dangerous side effects. In no sense can it be said that this defendant abandoned the treatment of the plaintiff. See Clark v. Wichman, 72 N. J. Super. 486 (App. Div. 1962). Consequently, plaintiff's action against this defendant is barred by the statute."

It will thus be noted that in a nearly identical factual situation a claim for medical malpractice was barred by the statute of limitations because it was not commenced within the statutory period measured from the time treatment ceased. It must likewise be barred in the instant case.

Mrs. Johnson concedes that she was cognizant of the alleged injury to her eyes more than 2 years prior to commencing this action. This knowledge was gained in October 1966, more than 2 years prior to November 27, 1968, when plaintiffs served the summons and complaint on Dr. Lynch. We must conclude that no genuine issue of material fact is raised on this record as to when the medical treatment given Mrs. Johnson by Dr. Lynch ceased and that plaintiffs' claims against Drs. Sterner, Schmidtke, and Lynch are barred by Minn. St. 541.07(1). The summary judgments in their favor are affirmed.

Affirmed.