**William R. JEWSON, Appellant,**

v.

**MAYO CLINIC, Appellee.**

**No. 81–2011.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1982.

Decided Oct. 22, 1982.

S. E. Schonberg, Albuquerque, N. M., V. Michael Heinz, Minneapolis, Minn., for appellant.

Dorsey & Whitney, James H. O'Hagan, Paul B. Klaas, Minneapolis, Minn., for appellee.

Before McMILLIAN and ARNOLD, Circuit Judges, and VAN SICKLE,[*] District Judge.

McMILLIAN, Circuit Judge.

William R. Jewson appeals from a summary judgment entered in the District Court[1] for the District of Minnesota pursuant to Fed.R.Civ.P. 56, dismissing his medical malpractice complaint against the Mayo Clinic as being barred by Minnesota's two-year medical malpractice statute of limitations, Minn.Stat.Ann. § 541.07(1) (West Supp. 1982). For reversal Jewson argues that the district court erred in granting summary judgment because there were disputed issues of material fact as to the running of the statute of limitations. Alternatively, Jewson argues that the statute of limitations, as applied, is unconstitutional. For the reasons discussed below, we affirm the district court.

The underlying facts are not in dispute. On September 24, 1942, doctors[2] at the Mayo Clinic, located in Rochester, Minnesota, diagnosed Jewson as suffering from lymphosarcoma.[3] Jewson underwent radia-

---

[*] The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation.

[1.] The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

The case was initially assigned to the Honorable Diana Murphy, United States District Judge for the District of Minnesota. Judge Murphy initially denied Mayo Clinic's motion for summary judgment finding that there were disputed issues of material fact as to when treatment ceased. Subsequently, Judge Murphy disqualified herself from all cases involving Mayo Clinic and the case was assigned to Judge Renner. Discovery was completed and Mayo Clinic renewed its motion for summary

judgment. Judge Renner granted the motion and allowed the parties to submit only new materials acquired since July 1980.

[2.] Drs. Howard M. Odel, Herbert W. Schmidt, John M. Waugh, Malcolm Hargraves, and A. C. Broders were involved in the diagnosis. Drs. Walter Popp and Eugene Leddy administered the radiation therapy. All of the above named physicians are deceased and none was named individually in the suit.

[3.] Lymphosarcoma is a malignant disease of the lymph system. It is more commonly known today as "histiocytic non-Hodgkins lymphoma." Brief of Mayo Clinic at 3 n.1.

tion therapy[4] from October 1942 to 1950 at Mayo Clinic. From 1950 through May 1961 Jewson continued as a patient at Mayo Clinic and received numerous check-ups to determine whether further radiation was necessary, as well as being treated for ailments unrelated to the lymphosarcoma. The check-ups indicated that Jewson was asymptomatic of lymphosarcoma and in 1961 the examinations for reoccurrence ended. From 1961 through 1969 Jewson was not seen or treated by any Mayo Clinic physician. During this period of time he was treated by doctors at the Olmstead Medical & Surgical Group for various ailments unrelated to lymphosarcoma.

In May 1969, Jewson again became a patient at Mayo Clinic and over the next several years was diagnosed and treated for a series of maladies including thyroid cancer, bowel obstructions, skin cancer, kidney cancer, and depression. He was last treated at the Mayo Clinic in July 1976. In July 1969, a Mayo Clinic pathologist amended Jewson's 1942 diagnosis of lymphosarcoma to follicular and reticular hyperplasia.[5] Jewson was not informed of the amendment by any Mayo Clinic physician but discovered it from an independent source in 1977.[6]

On April 19, 1978, Jewson initiated the present medical malpractice action against Mayo Clinic alleging numerous theories including: (1) his condition had been negligently misdiagnosed in 1942; (2) due to the misdiagnosis he had been subjected to inappropriate radiation therapy which resulted in later ailments including cancer of the thyroid, skin and kidney; (3) the Mayo Clinic had failed to obtain his informed consent for the radiation therapy; and (4) the Mayo Clinic physicians had fraudulently concealed the 1942 misdiagnosis by not informing him of the 1969 amendment.[7] The Mayo Clinic moved for a summary judgment arguing that Jewson's action was barred by Minnesota's two-year medical malpractice statute of limitations, Minn.Stat.Ann. § 541.07(1). Section 541.-07(1) provides that "all actions against physicians, surgeons, dentists, hospitals, sanitoriums, for malpractice, error, mistake or failure to cure, whether based on contract or tort" must be commenced within two years.

The district court granted the motion on the basis that under Minnesota law the statute of limitations in medical malpractice actions begins to run when treatment for a particular malady ceases, *citing Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.,* 291 Minn. 145, 190 N.W.2d 77 (1971). The district court reasoned that the

4. The only known treatment in the 1940's was roentgen rays which used orthovoltage equipment. The orthovoltage therapy equipment has since been discarded. Brief of Mayo Clinic at 4 n.3.

5. The amendment appears to have been made by Dr. Edgar Harrison on July 24, 1969, and appears as a one-line notation on a 1942 surgical report sheet. According to Jewson, the amendment indicates that he never suffered from lymphosarcoma but rather that the initial swelling of his glands was caused by infectious mononucleosis. Dr. Harrison did not indicate the reason for the amendment and is now deceased.

6. Dr. Douglas Jewson, no relation to appellant, who is independent of the Mayo Clinic, discovered the amendment and informed Jewson of it in 1977.

7. Jewson also argues that he had a strict products liability claim based on the radiation treatment he received. He further argues that that

claim is governed by Minn.Stat.Ann. § 541.05, the general tort statute of limitation of six years, rather than Minn.Stat.Ann. § 541.07(1), the medical malpractice statute of limitation of two years. Initially we note that Minnesota has never applied strict liability to a radiation case. We further note that the three cases we found which decided the issue held that x-radiation is not a product and therefore strict product liability cannot apply. Plaintiff's only claim is for medical malpractice. *See Dubin v. Michael Reese Hosp.,* 83 Ill.2d 277, 47 Ill.Dec. 345, 415 N.E.2d 350 (1980); *Greenberg v. Michael Reese Hosp.,* 83 Ill.2d 282, 47 Ill.Dec. 385, 415 N.E.2d 390 (1980); *Pitler v. Michael Reese Hosp.,* 92 Ill.App.3d 739, 47 Ill.Dec. 942, 415 N.E.2d 1255 (1980). However, we need not decide how the Minnesota courts would decide the issue because, as the district court correctly found, Jewson's claim for strict products liability was also barred under Minn.Stat.Ann. § 541.05 subd. 2 (West Supp. 1982) by reason of his 1961 to 1969 treatment hiatus.

Mayo Clinic's treatment of Jewson for lymphosarcoma had ceased in 1961, the date of his last check-up for reoccurrence, and, therefore, the 1961 through 1969 time span during which Jewson sought no treatment from and maintained no relationship with Mayo Clinic physicians barred all claims arising out of the alleged 1942 misdiagnosis. *Jewson v. Mayo Clinic,* No. 1–78–164 (D. Minn. Aug. 19, 1981). The district court further found that even if Jewson had established fraud and concealment regarding the 1969 amended diagnosis, such fraud could not resurrect a malpractice claim which had expired in 1963. *Id.* at 4.

When reviewing the district court's entry of summary judgment, this court applies the same standard the district court used in granting the motion for summary judgment. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716 (1973). Under Fed.R.Civ.P. 56(c), the motion for summary judgment should be sustained "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ This Circuit has repeatedly emphasized the drastic nature of the summary judgment remedy. It should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy. *See Snell v. United States,* 680 F.2d 545, 547 (8th Cir. 1982); *Jackson v. Star Sprinkler Corp.,* 575 F.2d 1223, 1226 (8th Cir. 1978); *New England Mutual Life Insurance Co. v. Null,* 554 F.2d 896, 901 (8th Cir. 1977). This imposes a heavy burden on the moving party because the evidence will be viewed in the light most favorable to the nonmoving party. The court also must give the nonmoving party the benefit of all reasonable inferences to be drawn from the facts. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). "However, this Circuit recognizes the remedy's salutary purpose of

avoiding useless and time consuming trials." *Butler v. MFA Life Insurance Co.,* 591 F.2d 448, 451 (8th Cir. 1979), *citing Percival v. General Motors Corp.,* 539 F.2d 1126, 1129 (8th Cir. 1976); *Lyons v. Board of Education,* 523 F.2d 340, 347 (8th Cir. 1975).

In the present case the district court properly applied the Minnesota case law interpreting Minn.Stat.Ann. § 541.07. Moreover, the principles relied on by the district court were recently reaffirmed by the Minnesota Supreme Court in *Grondahl v. Bulluck,* Minn., 318 N.W.2d 240 (1982). In *Grondahl,* the court stated:

> An action for medical malpractice is barred if not commenced within 2 years of the date on which the cause of action accrued. Minn.Stat. §§ 541.07, 541.07(1) (1980). The cause of action accrues when the physician's treatment for the particular condition ceases. *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.,* 291 Minn. 145, 190 N.W.2d 77 (1971); *Schmit v. Esser,* 183 Minn. 354, 236 N.W. 622 (1931). Where there are disputed questions of material fact as to whether a plaintiff is barred by the statute of limitations, these questions are to be decided by a jury. *Schmit v. Esser,* 183 Minn. at 357, 236 N.W. at 624; *see Sheets v. Burman,* 322 F.2d 277, 278 (5th Cir. 1963).
>
> . . . .
>
> . . . *Schmit* articulates three factors to be considered in determining when treatment ceases: (1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done. 183 Minn. at 358–59, 236 N.W. at 625.

318 N.W.2d at 242–43.

On appeal Jewson first argues that there were disputed material issues of fact as to when the Mayo Clinic's treatment of him for lymphosarcoma ceased. Jewson asserts that lymphosarcoma is an incurable disease, and that the treatment of it therefore continues for life. Therefore, the Mayo Clinic's

treatment did not cease until 1976, the date Jewson was last examined by a Mayo Clinic physician for medical problems allegedly resulting from the 1942 misdiagnosis. Jewson further asserts that his treatment at the Olmstead Medical Group for ailments unrelated to lymphosarcoma did not constitute a termination of his relationship with the Mayo Clinic because he always intended to return to the Mayo Clinic for treatment of his lymphosarcoma. This argument is without merit.

Initially we note that the plaintiff in *Grondahl* based her medical malpractice claim on an alleged misdiagnosis of multiple sclerosis. The fact that multiple sclerosis was an incurable disease did not alter the Minnesota Supreme Court's analysis in determining when the defendant physician's treatment of Grondahl's multiple sclerosis ceased. The reasoning of *Grondahl* is consistent with the reasoning of the Minnesota Supreme Court in *Schmit v. Esser,* 183 Minn. 354, 236 N.W. 622, 625 (1931).

When does the treatment cease? So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his employment. If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat, or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality.

*Id.* 183 Minn. 354, 236 N.W. at 625, *citing Schmit v. Esser,* 178 Minn. 82, 226 N.W. 196, 197 (1929).[8]

In the present case the Mayo Clinic diagnosed Jewson as suffering from lymphosarcoma in 1942 and treated him with radiation therapy from 1942 through 1950. After the radiation treatment ceased, Jewson continued to receive examinations to check for a reoccurrence of lymphosarcoma and the need for additional radiation therapy. In 1961 he received his last examination for reoccurrence and was found to be asymptomatic of the disease. At that time there was no more that the Mayo Clinic physicians could do to effect a cure. After the last examination, Jewson sought no treatment from and maintained no relationship with the Mayo Clinic for eight years. Therefore, under the reasoning in *Schmit v. Esser,* 183 Minn. 354, 236 N.W. 622, the Mayo Clinic's treatment of Jewson for lymphosarcoma ceased in 1961.

■ Jewson next argues that a material issue as to when his treatment ceased is raised by his claim that he visited the Mayo Clinic occasionally between 1961 and 1969 but was not seen by any physician, *citing Grondahl.* We disagree. In *Grondahl,* the Minnesota Supreme Court concluded that a telephone consultation between a physician and his patient could constitute proof of a continuing physician-patient relationship and is evidence that the physician is attending and examining the patient. In contrast, Jewson does not allege that he consulted with or was examined by any Mayo Clinic physician between 1961 and 1969. He merely claims that he visited the clinic occasionally and that he spoke informally about his lymphosarcoma with his neighbor who happened to be a Mayo Clinic physician. We conclude that allegations of mere visits and over-the-back-fence chats do not constitute evidence of a continuing physician-patient relationship under the reasoning of *Grondahl.*

Jewson next argues that there was a disputed issue of material fact as to when the statute of limitations began to run. Jewson reasons that his cause of action did not accrue until 1969 when the damage of

---

**8.** The rule enunciated in *Schmit v. Esser,* 183 Minn. 354, 236 N.W. 622, has been reconsidered and reaffirmed by the Minnesota Supreme Court in *Grondahl; Johnson,* 291 Minn. 145, 190 N.W.2d 77; *Swang v. Hauser,* 288 Minn. 306, 180 N.W.2d 187 (1970); and *Couillard v. Charles T. Miller Hosp., Inc.,* 253 Minn. 418, 92 N.W.2d 96 (1958).

the 1942 misdiagnosis and radiation therapy began to manifest itself and that the statute was tolled from 1969 until 1977 by reason of Mayo Clinic's concealment of the 1969 amended diagnosis, or until 1976 by reason of Jewson's continued treatment at the Mayo Clinic. For support Jewson relies on *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155, 160–61 (8th Cir. 1975), which held that in a personal injury case arising from asbestos-related disease, the plaintiff's cause of action accrues "when the disease manifests itself in a way which supplies some evidence of causal relationship to the manufactured product." *Id.* Jewson also relies on *De Cosse v. Armstrong Cork Co.,* Minn., 319 N.W.2d 45, 52 (1982), which held that in a wrongful death action arising from asbestos exposure, the plaintiff's cause of action accrues either upon the manifestation of the total disease in a way that is causally linked to asbestos, or upon the date of death, whichever is earlier.

■ Jewson's reliance on the cited cases is misplaced. Neither of the cases involved Minnesota's medical malpractice statute of limitations and both stressed the unique character of asbestos-related injuries and deaths in holding that the plaintiffs' causes of action did not accrue until the effects of the asbestos exposure were manifested. Rather, the Minnesota Supreme Court has expressly rejected this so-called "discovery rule" in medical malpractice cases. *See Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.,* 291 Minn. 145, 190

N.W.2d at 81, *citing Schmucking v. Mayo,* 183 Minn. 37, 235 N.W. 633 (1931). "The cause of action accrues when the physician's treatment for the particular condition ceases." *Grondahl v. Bulluck,* 318 N.W.2d at 243 (citations omitted). "Thus, in the absence of fraud, ignorance of the existence of the cause of action does not toll the statute of limitations." *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.,* 291 Minn. 145, 190 N.W.2d at 81.[9] Therefore, the fact that the effects of the alleged misdiagnosis and radiation therapy were not manifested until 1969 does not, by itself, toll the statute of limitations.[10]

■ Jewson next argues that the 1969 amended diagnosis constitutes fraudulent concealment, thereby tolling the statute of limitations until 1977 when he first learned of the amendment. However, as the district court correctly found, "[t]here was no concealment, if any there was, until 1969 when the amended diagnosis was entered on the 1942 surgical report. Since no cause of action existed at that time, there was no claim against which the statute could be tolled." *Jewson v. Mayo Clinic,* slip op. at 4 (footnote omitted).

Jewson also argues that fraudulent concealment may have been present from the 1940's because the Mayo Clinic's negligence in making the 1942 diagnosis would have been obvious to any physician with access to Jewson's record, due to the Mayo Clinic's failure to perform a heterophil antibody test to rule out the possibility of infec-

9. We also note that a Minnesota district court recently held that for purposes of the statute of limitations, a physician's treatment of a patient for the side effects of radiation does not constitute treatment of the original ailment which required the radiation. In essence, the court held that treatment ceased when the radiation treatments stopped and the patient was released from the hospital. *Amar v. West Bank Radiation Therapy Center,* No. 772019 (Minn. Dist.Ct. Nov. 17, 1980), *aff'd mem.,* No. 81–206 (Minn. Jan. 26, 1982).

We realize that the Minnesota Supreme Court's summary affirmance itself has no precedential value. However, state district court opinions must be given proper regard by federal courts sitting in diversity. *See Comm'r of*

*Internal Revenue v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

10. We note that the majority of states which have adopted a "discovery" rule in medical malpractice claims have also adopted a corollary statute which bars actions brought a certain number of years after the allegedly negligent act occurred, whether injury has occurred or not. *See, e.g.,* Iowa Code Ann. § 614.1(9) (West Supp.1982) (six years); Kan.Stat.Ann. § 60.513(c) (1976) (four years); Mo.Rev.Stat. § 516.105 (1978) (ten years).

Therefore, even in those jurisdictions using the discovery rule, Jewson's claim may be barred.

tious mononucleosis. In essence Jewson is arguing that the numerous Mayo Clinic physicians involved in his treatment for lymphosarcoma may have been involved in a conspiracy since 1942 to either cover up one another's mistakes or to manufacture statistics demonstrating the Clinic's successful treatment of lymphosarcoma. There are no credible specific facts supporting this allegation and we conclude that it does not raise a genuine issue for trial.

Jewson next argues that Minn. Stat.Ann. § 541.07(1) operates as a statute of repose in the present case because it barred his cause of action before it accrued. Jewson argues that if Minn.Stat.Ann. § 541.07(1) is applied as a statute of repose it violates the equal protection clause of the United States Constitution by unconstitutionally distinguishing between plaintiffs with latent malpractice injuries and plaintiffs whose malpractice injuries manifest themselves within two years. This argument might have merit if the reasons for the difference were wholly irrelevant to the objective of the statute, *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961), or so unrelated to the statute's legitimate purpose as to make its provisions irrational. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). However, such is not the case. Under Minnesota law, a patient can bring a medical malpractice action against his physician within two years after the termination of the treatment for which the physician was retained. The reasons underlying this rule have been explained as follows:

A practical reason for this general rule is that the actionable treatment does not ordinarily consist of a single act or, even if it does, it is most difficult to determine the precise time of its occurrence. A policy reason is that a patient must repose reliance upon his physician in the completion of the course of curative treatment, a relationship of trust which inhibits the patient's ability to discover acts of omission or commission constituting malpractice.

*Swang v. Hauser,* 288 Minn. 306, 180 N.W.2d 187, 189–90 (1970). The state's choice of the termination of treatment as the event which triggers the running of the statute is consistent with its strong and legitimate interest in preventing litigation of stale claims. That interest is particularly strong in the present case where the doctors who made the initial diagnosis and administered the radiation treatments are deceased, and the method of treatment administered is now obsolete. The statute of limitations, which applies to all medical malpractice plaintiffs, does not deny Jewson equal protection. *See Botzet v. Spencer,* 362 F.Supp. 177, 179 (D.Minn.1973) ("Since all plaintiffs and defendants in medical malpractice actions are treated alike under [Minn.Stat.Ann.] Section 541.-07(1), there can be no denial of equal protection.").

Jewson's final argument is that the statute of limitations, as applied, violates due process by barring his right to a medical malpractice action before the damage had accrued. We disagree. Limitation periods are designed to eliminate stale claims. *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1949). "They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). They sometimes expire before a claimant has sustained any injury, *see, e.g., Dincher v. Marlin Firearms Co.,* 198 F.2d 821, 822–23 (2d Cir. 1952), or before he knows he has sustained an injury, *see, e.g., Clark v. Gulesian,* 429 F.2d 405, 406 (1st Cir. 1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971). If the limitation period is otherwise reasonable, a claimant is not thereby deprived of his right to due process. *See, e.g., Ornstein v. Regan,* 604 F.2d 212, 214 (2d Cir. 1979). Here the state of Minnesota was justifiably concerned about causes of action arising out of incidents occurring years ago. Long lapses of time result in the absence and unavailability of critical

witnesses as well as faded memories. That concern is particularly apt here where the incidents upon which Jewson bases his allegations of malpractice occurred at least thirty years ago and the physicians involved in the diagnosis and treatment are deceased. The statute of limitations as applied did not violate Jewson's due process rights.

The judgment of the district court is affirmed.