**Nancy L. FRANCIS, et al.,
Respondents,**

v.

**James T. HANSING, Special Administrator of the Estate of Charles McKenzie, M.D., Appellant.**

**No. C2–89–1193.**

Court of Appeals of Minnesota.

Dec. 26, 1989.

Review Denied Feb. 21, 1990.

Fredric A. Bremseth, Wayzata, for respondents.

Lynn G. Truesdell, III, Minneapolis, for appellant.

Heard, considered and decided by NORTON, P.J., and SCHUMACHER and FLEMING,* JJ.

### OPINION

NORTON, Judge.

Respondents Nancy Francis and Kenneth Francis brought this action against appel-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

lant Estate of Charles McKenzie (the estate) alleging that Dr. Charles McKenzie negligently failed to remove an intrauterine device (IUD) from Nancy Francis' uterus. The estate brought a summary judgment motion arguing that the malpractice action was time-barred, but the trial court denied the motion. This court granted the estate's motion for discretionary review by this court. We reverse.

## FACTS

On April 7, 1967, Dr. Charles McKenzie inserted a Safety Coil IUD into the uterus of respondent Nancy Francis. Dr. McKenzie inserted another IUD, a Lippes Loop, on May 23, 1967, because the first IUD had apparently been expelled. On February 16, 1972, Dr. McKenzie removed the Lippes Loop at Nancy Francis' request to enable her to become pregnant. Dr. McKenzie's last recorded visit with Nancy Francis was on May 31, 1972.

According to the complaint, respondents unsuccessfully tried to conceive a child during the period from 1972 to 1987. During the spring of 1987, an ultrasound revealed the presence of the coil IUD in Nancy Francis' uterus. Nancy Francis claims to have been unaware of the presence of the coil until that time. The coil was surgically removed on May 14, 1987.

In March, 1989, respondents brought this action against the estate of Dr. McKenzie who had died in February, 1980. The estate brought a motion for summary judgment contending that this action was time-barred pursuant to Minn.Stat. §§ 541.01 and 541.07. In an order dated June 2, 1989, the trial court denied the estate's motion stating as follows:

> It is the opinion of this Court that in foreign object medical malpractice cases the cause of action accrues when the plaintiff discovers or by reasonable diligence should have discovered that a foreign object had been left in her body.

The estate brought a motion for discretionary review by this court pursuant to Minn. R.Civ.App.P. 105 which was granted in an order dated July 18, 1989.

## ISSUES

1. Did the trial court err by applying the "discovery rule" to a foreign-object medical malpractice case to toll the statute of limitations?

2. Did the trial court err by determining that Dr. McKenzie's failure to remove the coil constituted a continuing tort?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact or whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hospitals and Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

The trial court held that respondents' claim was not time-barred. The time in which a medical malpractice action may be brought is limited by statute.

> Actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues, * * *.

Minn.Stat. § 541.01 (1988).

> [T]he following actions shall be commenced within two years:
> (1) * * * [A]ll actions against physicians, surgeons, * * * for malpractice, error, mistake or failure to cure, whether based on contract or tort; * * *.

Minn.Stat. § 541.07 (1988).

1. Appellant contends that the trial court erred by holding that the two-year statute of limitations contained in Minn. Stat. § 541.07(1) did not begin running until Nancy Francis discovered the continued presence of the coil in her uterus. Minnesota has adopted a "termination of treatment" rule to determine when the two-year statute of limitations begins to run and has expressly refused to apply the discovery rule. *Johnson v. Winthrop Laboratories Division of Sterling Drug, Inc.*, 291 Minn. 145, 149, 190 N.W.2d 77, 80 (1971). The court stated:

> Plaintiffs contend that the 2-year statute of limitations in § 541.07(1) started to run when Mrs. Johnson first discovered her injury, or, by the exercise of reasonable diligence, should have discovered it.

* * * This argument has been made before, but we have consistently rejected it, holding that the medical malpractice statute of limitations begins to run when the physician's medical treatment for the particular condition ceases.

*Johnson,* 190 N.W.2d at 79–80. Further, the court held that, "in the absence of fraud, ignorance of the existence of the cause of action does not toll the statute of limitations." *Id.* 190 N.W.2d at 81. *See also Offerdahl,* 426 N.W.2d at 427. (The medical treatment should be viewed as a whole and the statute of limitations begins when the treatment ceases.)

The rule established in *Johnson* remains the law in Minnesota. *St. Aubin v. Burke,* 434 N.W.2d 282, 284 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. March 29, 1989). (This court refused to apply the discovery rule to a medical malpractice action brought over two years after defendant doctor performed a breast biopsy and cancer was discovered through a subsequent biopsy by a different physician.); *Goellner v. Butler,* 836 F.2d 426, 431 (8th Cir.1988). (The Eighth Circuit Court of Appeals held that Minnesota courts had rejected the discovery rule in malpractice cases and refused to apply the rule to a case in which plaintiff did not discover until ten years after the insertion of an IUD that its improper insertion may have caused an infection that damaged plaintiff's fallopian tubes.)

The trial court in the present case relied on a product liability case to support its application of the discovery rule. In *Dalton v. Dow Chemical Co.,* 280 Minn. 147, 158 N.W.2d 580 (Minn.1968), the plaintiff had worked for Dow Chemical and was exposed to a product called vythene. Plaintiff began experiencing various disorders and eventually paralysis in August, 1957. In September 1957, doctors opined that plaintiff's problems stemmed from his exposure to the vythene.

In January 1964, plaintiff brought a negligence action against Dow Chemical. The trial court granted Dow's motion for summary judgment holding that plaintiff's action was time-barred. The Minnesota Su-

preme Court affirmed the trial court and held:

Under the circumstances disclosed by the record herein, the action would accrue at such time as it could be brought in a court of law without dismissal for failure to state a claim. * * * An action for negligence cannot be maintained, nor does the statute of limitations begin to run, until damage has resulted from the alleged negligence. * * * Thus, the alleged negligence * * * coupled with the alleged resulting damage is the gravamen in deciding the date upon which the cause of action at law herein accrues.

*Id.,* 280 Minn. at 152–53, 158 N.W.2d at 584. *See also, Offerdahl,* 426 N.W.2d at 429.

The *Dalton* court acknowledged that federal law permitted application of the discovery rule.

In *Daniels v. Beryllium Corp.,* (E.D.Pa.) 211 F.Supp. 452, 455, the court stated:
"* * * where a plaintiff has full knowledge of the illness brought about by defendant's course of conduct the injury has been done and the statute of limitations begins to run at that time."
Similar holdings can be found in * * * (citations omitted). Thus, the rule in the Federal courts is that where injury is based on exposure to infectious or deleterious chemicals, the date upon which the statute of limitations begins to run is the date on which the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, his illness.

*Dalton,* 280 Minn. at 151–52, 158 N.W.2d at 583. Nowhere in the *Dalton* opinion does the supreme court adopt the federal rule. It is clear that Minnesota case law does not support the trial court's application of the discovery rule in the present case.

■ 2. The estate also argues that the trial court erred in applying the concept of a continuing tort theory to permit the estate to avoid the statute of limitations. The trial court stated:

[The] ongoing presence of the IUD constituted an ongoing or continuous tort. Therefore, the statute of limitations did

not begin to run until the tort was completed by removal of the IUD on May 14, 1987.

The trial court supported its statement by citing *Northern States Power Co. v. Franklin,* 265 Minn. 391, 122 N.W.2d 26 (1963), a property trespass case. Factually *Franklin* is distinguishable from the present case. The plaintiff in *Franklin* had placed steel towers on part of defendants' property in which plaintiff had no interest.

The supreme court held that defendants' request for removal of the steel towers and the continued presence of the towers on defendants' property created an issue as to whether a continuing trespass existed. *Franklin,* 265 Minn. at 396, 122 N.W.2d at 30–31. Additionally, while the court stated that the statute of limitations did not run from the initial trespass, there was no issue in *Franklin* as to whether the trespass claim was time-barred. *See Id.,* 265 Minn. at 397, 122 N.W.2d at 31. Rather, the court held that the trial court had improperly disposed of the trespass issue on a motion for failure to state a claim and the court's mention of the statute of limitations was merely dictum. *See Id.* We are not persuaded that *Franklin* permits application of the continuing tort theory to the issue of whether respondents' medical malpractice claim is barred by the applicable statute of limitations.

Nor is the theory of a continuing tort supported by a wrongful death case, *DeCosse v. Armstrong Cork Co.,* 319 N.W.2d 45 (Minn.1982). In *DeCosse,* the victim's death was caused by exposure to asbestos. Four years lapsed, however, before the victim's death was causally linked to his work with asbestos. The supreme court expressly refused to adopt the discovery rule. *Id.* at 51–52. The court, however, regarded the victim's continued exposure to asbestos as a continuing tort. *Id.* at 48–49. "[T]he act or omission of exposing Mr. DeCosse to asbestos would continue until the disease manifested itself *and was causally linked to respondents' products.*" *Id.* at 49 (emphasis in original).

The language of the holding in *DeCosse* suggests that the court intended it to have a narrow reach.

> We * * * hold that, because of the unique character of asbestos-related deaths, wrongful death actions brought in connection with those deaths accrue either upon the manifestation of the fatal disease in a way that is causally linked to asbestos, or upon the date of death—whichever is earlier.

*DeCosse,* 319 N.W.2d at 52. In the present case, there is neither a wrongful death, an action governed by Minn.Stat. § 573.02, nor exposure to a substance which proved to be hazardous. We are not inclined to expand the court's holding in *DeCosse* and apply the continuing tort theory to a foreign-object medical malpractice case.

## DECISION

We hold that Minnesota case law does not permit the application of the discovery rule to a medical malpractice case. Likewise, we do not find any precedent in Minnesota law that would permit this court to hold that Dr. McKenzie's failure to remove the first IUD constituted a continuing tort.

Reversed.

SCHUMACHER, J., concurs specially.

SCHUMACHER, Judge (concurring specially).

Reason and common sense dictate that the discovery rule be applied in medical malpractice cases where a foreign object has been placed in a person's body and negligently allowed to remain.

In this case, the plaintiff was incapable of knowing that the IUD remained in her body. The law in Minnesota generally holds that ignorance of a cause of action does not toll the statute of limitations. *Weston v. Jones,* 160 Minn. 32, 36, 199 N.W. 431, 433 (1924). However, that rule of law is based upon the theory that ignorance is the result of want of diligence and the party cannot take advantage of his own fault. *Schmucking v. Mayo,* 183 Minn. 37, 39, 235 N.W. 633 (1931).

In this case, as in most foreign object malpractice cases, no amount of diligence by the plaintiff could detect the presence of the IUD. The plaintiff could not consult the medical profession regarding observable symptoms such as pain or discoloration because, unfortunately, the IUD caused no such symptoms.

Application of the discovery doctrine in foreign object cases does not offend the policy behind statutes of limitations, which is basically to spare the courts of stale claims, and the citizen from being put on defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (quoted by *Wichelman v. Messner*, 250 Minn. 88, 108 n. 5, 83 N.W.2d 800, 817 n. 5 (1957)).

As noted by the New Jersey Supreme Court:

> It must be borne in mind that [plaintiff's] claim does not raise questions as to her credibility nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors. Here the lapse of time does not entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim.

*Fernandi v. Strully*, 35 N.J. 434, 450–51, 173 A.2d 277, 286 (1961). In foreign object cases, no claim can be made that the patient's action may be feigned or frivolous. In addition, there is no possible causal break between the negligence of the doctor or hospital and the patient's injury. *Flanagan v. Mount Eden General Hospital*, 24 N.Y.2d 427, 430, 301 N.Y.S.2d 23, 26, 248 N.E.2d 871, 872–73 (1969).

In this case, plaintiff must necessarily rely on the physician to remove the object.

> The relationship between the utterly helpless surgical patient and his surgeon, during surgery, is such that the latter must be held to have assumed the responsibility for the removal of such articles, * * *.

*Melynk v. Cleveland Clinic*, 32 Ohio St.2d 198, 200, 290 N.E.2d 916, 917 (1972).

At least 40 states have adopted the discovery rule in foreign object cases. The Minnesota Supreme Court has not ruled on this question. I would urge the adoption of this rule.