# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2865MN

_____

| | | |
|---|---|---|
| Maria D'Amaro, | * | |
| | * | |
| Appellant, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the District of |
| | * | Minnesota. |
| Dr. J. Joyce; Dr. Swedlund; and | * | |
| The Mayo Clinic, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: July 12, 2002

Filed: July 24, 2002

_____

Before LOKEN, RICHARD S. ARNOLD, and RILEY, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Maria D'Amaro, a pro se plaintiff alleging medical malpractice, has sued the Mayo Clinic and two of its physicians. She claims that the Clinic and the physicians failed to inform her of a heart problem they discovered during two examinations performed before she underwent surgery. The District Court[1] granted summary

_____

[1]The Hon. Paul A. Magnuson, United States District Judge for the District of Minnesota.

judgment in favor of defendants on the ground that the statute of limitations had run. We affirm.

## I.

Ms. D'Amaro, a resident of New York, underwent four surgeries on her nose and face at the Mayo Clinic in Rochester, Minnesota, in 1992, 1994, 1995, and 1996. Before her first surgery, in September 1992, she received a preoperative examination, which included a chest x-ray. The x-ray revealed an abnormality in Ms. D'Amaro's pulmonary artery. The Clinic determined that the abnormality did not preclude the use of anesthesia, and it went ahead with the surgery. In October 1994, Ms. D'Amaro again underwent surgery at Mayo. A preoperative chest x-ray and electrocardiogram again revealed an abnormality in Ms. D'Amaro's pulmonary artery. Defendants Dr. John Joyce and Dr. Harry Swedlund examined the results and determined that the surgery could proceed. Following the surgery, neither of the doctors treated Ms. D'Amaro again. In September 1995 and September 1996, Ms. D'Amaro underwent two more procedures at Mayo, neither of which required a preoperative chest x-ray or electrocardiogram. She did not return to Mayo thereafter. None of the four operations had anything to do with the patient's heart or blood vessels. They were all reconstructive surgeries.

Plaintiff's exhibits reveal that, at some point in 1997, Ms. D'Amaro was diagnosed with significant atrial septal defect—a hole in the wall separating the two upper chambers of the heart—and possible resulting pulmonary hypertension—a hardening of blood vessels in the lungs. On August 1, 2000, Ms. D'Amaro brought this suit, claiming that the Mayo Clinic and the two doctors negligently failed to inform her of the results of the preoperative examinations. If she had been properly informed, she says, the condition could have been addressed earlier and perhaps avoided or ameliorated. Instead, it has developed into a debilitating and life-threatening condition.

## II.

The statute of limitations in effect when the defendants' allegedly negligent acts occurred was two years. Minn. Stat. § 541.07(1) (1996). However, in 1999, Minnesota established a new limitations period of four years for medical malpractice. Act of Mar. 26, 1999, ch. 23, §§ 1-3, 1999 Minn. Laws 128, 128 (codified at Minn. Stat. § 541.076(b) (2000)) ("An action by a patient or former patient against a health care provider alleging malpractice, error, mistake, or failure to cure . . . must be commenced within four years from the date the cause of action accrued."). The statute became effective on August 1, 1999, applying to "actions commenced on or after that date." Id. The Minnesota Supreme Court recently has held that this statute not only extends the time remaining to file unexpired claims, but it also acts retroactively to revive claims as to which the two-year statute had expired before the effective date of the new statute. Gomon v. Northland Family Physicians, Ltd., 645 N.W.2d 413, 414 (Minn. 2002). Thus, the four-year statute of limitations applies to this action, and the question is when that statute began to run.

Under Minnesota law, a cause of action for medical malpractice generally accrues when the physician's treatment for a particular condition ceases. Fabio v. Bellomo, 504 N.W.2d 758, 762 (Minn. 1993). When there is a single act of allegedly negligent conduct, however, the cause of action accrues "at the time the plaintiff sustains damage from that act, absent fraudulent concealment," Ciardelli v. Rindal, 582 N.W.2d 910, 912 (Minn. 1998), or "at the time of the negligent act." Doyle v. Kuch, 611 N.W.2d 28, 31 (Minn. App. 2000).

Minnesota is one of the few states that have not adopted the discovery rule, a rule that tolls the statute of limitations for medical malpractice actions until the patient has discovered or should reasonably have discovered the injury. Johnson v. Winthrop Labs. Div. of Sterling Drug, Inc., 291 Minn. 145, 149, 190 N.W.2d 77, 81 (1971); Fabio, 504 N.W.2d at 764 n.2 (Gardebring, J., dissenting) (noting that

-3-

although "[a]s of early 1993, 41 states had adopted the discovery rule in some fashion for medical malpractice cases," "[t]his court . . . has explicitly declined to adopt the discovery rule"). Thus, "in Minnesota, the statute of limitations for medical malpractice may bar a cause of action before the injured party discovers they are suffering damages caused by negligent medical conduct." Zagaros v. Erickson, 558 N.W.2d 516, 521 (Minn. App. 1997) (citation omitted). Therefore, although Ms. D'Amaro may not have learned of her heart problem or of defendants' failure to inform her of the results of the two examinations until some point well after the allegedly negligent acts and the cessation of her treatment, that fact does not prevent the statute of limitations from running.

When did the statute of limitations begin to run in this case? Or, to put it in traditional legal terms, when did the cause of action accrue? As we have noted, the general rule is that the cause of action accrues when the physician's treatment for a particular condition ceases. In this case, however, the plaintiff was never treated for the condition she says was caused by the physicians' negligence. She was never treated by defendants for a heart or circulatory problem. Accordingly, this case appears to be one arising out of particular acts of negligent conduct, specifically the failure to pass on the relevant information about her blood vessels to the plaintiff in September 1992, and again in October 1994. Ms. D'Amaro's visits to the clinic in 1995 and 1996 do not seem relevant for this purpose, because neither of them related to a heart or circulatory problem, and neither of them involved the failure to pass on any new information about such a problem. It might be thought that the failure to reveal relevant information is itself a continuing instance of negligence, beginning in 1992 and lasting until 1997, when the plaintiff discovered her heart condition. This reasoning, while it has some appeal, is inconsistent with the opinion of the Minnesota Supreme Court in Fabio. There, a physician assured the plaintiff that a lump in her armpit was nothing to worry about. Later, however, the lump turned out to be breast cancer (which, happily, was successfully treated). A malpractice action for the mis-diagnosis was held barred by the two-year statute of limitations. The

plaintiff argued, among other things, that the failure to make a correct diagnosis was a continuing omission, and that, as a matter of fairness, this failure should toll the statute, or prevent it from beginning to run in the first place. The <u>Fabio</u> court rejected this argument.

So here, the statute began to run, at the latest, in 1994, when the second and last allegedly negligent omission occurred. At this time, the plaintiff sustained, or began to sustain, damage, because from and after this time, according to the theory of her complaint, each day that passed without her having been properly informed made it more difficult for her to get proper medical attention, on account of the progression of the condition. Therefore, the statute ran, at the latest, in October of 1998. This action was filed on August 1, 2000, and was therefore untimely.

Although we are aware of the serious health difficulties that Ms. D'Amaro now faces, because the statute of limitations has run, we are not able to hear her claim.

The decision of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.