**DULUTH FIREMEN'S RELIEF
ASSOCIATION, et al.,
Appellants,**

v.

**CITY OF DULUTH, et al., Duluth
Retired Firefighters Association,
et al., Respondents.**

**No. C2–83–998.**

Supreme Court of Minnesota.

Jan. 18, 1985.

Daniel C. Berglund, Duluth, for appellants.

William P. Dinan, Duluth, for City of Duluth et al.

Harold A. Frederick, Duluth, for Duluth Retired Firefighters, Ass'n.

PETERSON, Justice.

Appellant, Duluth Firemen's Relief Association (Relief Association), brought an action for a declaratory judgment holding that Duluth City Council Resolution No. 81–0887R, enacted on December 14, 1981, is unauthorized by law and unconstitutional. Under the resolution, a supplemental pension benefit originally paid only to firefighters retiring after July 15, 1980, was extended to those retiring prior to June 9, 1980, decreasing the original benefit by $10.20 per month. The trial court dismissed the complaint and ordered appellants to disburse the contested benefits in accordance with the December 14 resolution. We affirm.

Relief Association is a nonprofit corporation governed by articles, bylaws, and Minn.Stat. § 69.25–.77 (1982 & Supp.1983). Relief Association limits membership to active firefighters hired by the city prior to June 9, 1980, although it administers pension benefits paid to retired firefighters. Respondent Duluth Retired Firefighters Association (Retired Firefighters) is an unincorporated association comprised of approximately 85 retirees, former members of Relief Association.[1]

During the 1970's, there was considerable agitation to eliminate both police and firefighters' relief associations, which were primarily funded through annual levies in the local community, and to include those employees under the general provisions of Public Employees Retirement Act (PERA), Minn.Stat. §§ 353.63 to 353.68 (1982 & Supp.1983). A comprehensive police and firefighters' pension bill aimed at phasing out relief associations was enacted during the 1980 legislative session as article XV of the omnibus tax act, Act of April 23, 1980, ch. 607, art. XV, §§ 4–7, 1980 Minn.Laws 1160, 1301–07 (codified at Minn.Stat. § 423A.01–.04 (1982)). This statute requires that police and firefighters hired by any municipality after June 15, 1980, receive retirement coverage under PERA un-

---

1. Active members of Relief Association, representative of various classes of members, joined as class-appellants. John P. Prouty and Stanley F. Walezynski, officers of Retired Firefighters, joined as respondents.

less the municipality, on or before August 5, 1980, filed with the proper authorities copies of a document indicating intent to continue under the relief association system. Minn.Stat. § 423A.01, subd. 1 (1982).

To induce communities to agree to phase out relief associations and to place new employees under PERA, the statute provides an additional retirement annuity payable to relief association members, except those in Minneapolis, retiring with an excess of 25 years of service credit, equal to ½ of 1% of the salary upon which each individual's service pension is calculated. Minn.Stat. § 423A.01, subd. 3 (1982). This benefit amount is not subject to escalation and is referred to as the "half-percent benefit." The legislature also gave each municipality the option of developing its own alternative to the half-percent benefit, limited only in that any alternative benefit's total cost, including amortization by December 31, 2010,[2] cannot exceed 1.26% of covered payroll, and its adoption must follow "an actuarial analysis of the effect of any change." Act of April 23, 1980, ch. 607, art. XV, § 7, 1980 Minn.Laws 1160, 1307 (codified as amended at Minn.Stat. § 423A.04 (1982)).

On June 9, 1980, the Duluth City Council approved Resolution No. 80–464, which authorized an alternative benefit increase of 1.25 units to all police officers and firefighters employed on and retiring after July 15, 1980. This benefit increased the monthly pension of those Relief Association members by $31.86. Members retiring between June 9, 1980, and July 15, 1980, received the half-percent benefit, and their benefit is not here challenged. Under the same resolution, employee contributions payable by active firefighters under the Relief Association pension plan were increased from 6% to 7% in 1981 and to 8% in 1982, equal to a total monthly increase of $40.78. The council filed a copy of this resolution with the Minnesota Secretary of State on December 2, 1980.

On November 3, 1980, the council amended its June 9, 1980, resolution to apportion the police increase equally among active and retired officers. This amendment has not been challenged. On December 14, 1981, the council similarly, by Resolution No. 81–0887, spread the firefighters' increase equally among those who retired prior to June 9, 1980, and those who retired after July 15, 1980 (amended resolution). Because of limitations in the authorizing statute, this action necessitated reducing the active firefighters' increase to $21.66 per month. The council filed a certificate approving this benefit change with the secretary of state on January 5, 1982.

Apparently in response to Duluth's amended resolution, the legislature enacted Minn.Stat. § 423A.05 (1982), entitled "Clarification of Interpretation on Authority to Approve Alternative Benefit Increases." This statute states that

No provision of Minnesota Statutes, Section 645.021, or Laws 1980, Chapter 607, Article XV, Sections 7 or 25, shall be construed as authorizing any municipality which approved an alternative benefit increase * * * to amend, modify, or revoke that approval or substitute a different alternative benefit increase for the alternative benefit increase which was previously approved.

Minn.Stat. § 423A.05 (1982).

Prior to enactment of the clarifying legislation, Relief Association and the class-appellants commenced this action in St. Louis County District Court, seeking a declaratory judgment invalidating the city council's December 14, 1981, resolution and reinstating the original $31.86 monthly benefit to those firefighters retiring after July 15, 1980. Basically, Relief Association claimed that the amended resolution was invalid both because it was unauthorized by statute and because it unconstitutionally deprived active firefighters of their property rights. Retired Firefighters and the city

---

**2.** The provision, "including amortization by December 31, 2010," was added to the statute in 1982, after the events relative to this action had occurred.

answered, claiming that the amended resolution was valid.[3]

The trial court upheld the validity of the amended resolution and ordered Relief Association to disburse pension funds, concluding that nothing in Minn.Stat. §§ 423A.04 or 423A.05 prohibited the amended resolution and, further, that the amended resolution did not violate the constitutional rights of Relief Association members whose benefits were decreased.[4] The trial court therefore dismissed the action, and this appeal follows.

We have four issues before us involving challenges to the validity of the city's amended resolution:

(1) Is the amended resolution invalid because its enactment was untimely?

(2) Is the amended resolution barred by the retroactive effect of the clarifying amendment, Minn.Stat. § 423A.05 (1983)?

(3) Is the amended resolution invalid because it is contrary to the language of the authorizing statute, Minn.Stat. § 423A.04 (1982)?

(4) Is the amended resolution unconstitutional?

1. Section 25 of Act of April 23, 1980, ch. 607, art. XV, 1980 Minn.Laws 1162, 1314, which governs the effective dates of several provisions of article XV, provides that "[a]ny benefit change pursuant to section 7 [codified at Minn.Stat. § 423A.04 (1982)] is effective upon approval by the governing body of the applicable municipality *and upon compliance with Minnesota Statutes, Section 645.021.*" (emphasis added). Minn.Stat. § 423A.05, clarifying section 423A.04, also refers to alternative benefit increases "which complied with Minnesota Statutes, Section 645.021, Subdivision 3."

Section 645.021 governs the effectiveness of special laws,[5] establishing in subdivision 3 that when a local government unit has approved a special law, the "chief clerical officer of the unit shall * * * file with the secretary of state a certificate stating the essential facts necessary to valid approval * * *." Minn.Stat. § 645.021, subd. 3 (1982). The subdivision continues, "If a local government unit fails to file a certificate of approval before the first day of the next regular session of the legislature, the law is deemed to be disapproved by such unit unless otherwise prohibited in the special law." *Id.* Relief Association argues that application of this subdivision to section 423A.04 required that certificates of approval of all alternative benefit changes be filed with the secretary of state prior to

---

3. By its terms, the amended resolution stayed payment of benefits to pre-June 9, 1980, retirees for 90 days following its enactment and throughout the course of any litigation as to its validity. Consequently, those retirees have not received any benefits under this resolution.

4. Retired Firefighters also alleged that Relief Association and its officers had a fiduciary duty to retired members of the association which they violated by attempting to claim the entire bonus pension for themselves. In addition, Retired Firefighters filed a third-party complaint against the city and alleged that apportioning benefits to police in November 1980 but not to firefighters was without a rational basis and violated equal protection. Finally, Retired Firefighters requested that the district court prohibit Relief Association from paying the association's attorney fees in this action. Because the trial court never reached these issues, they are not involved in this appeal.

5. Minn. Const. art. 12, § 2, defines and governs special laws:

Every law which upon its effective date applies to a single local government unit or to a group of such units in a single county or a number of contiguous counties is a special law and shall name the unit or, in the latter case, the counties to which it applies. The legislature may enact special laws relating to local government units, but a special law, unless otherwise provided by general law, shall become effective only after its approval by the affected unit expressed through the voters or the governing body and by such majority as the legislature may direct. Any special law may be modified or superseded by a later home rule charter or amendment applicable to the same local government unit, but this does not prevent the adoption of subsequent laws on the same subject. The legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same except as provided in this section.

January 6, 1981, the first day of the next regular legislative session following enactment of section 423A.04, and that because its certificate of approval was not filed until January 5, 1982, the amended resolution was untimely.

■ We agree with the trial court that section 645.021 does not bar the amended resolution, but we do not embrace the trial court's conclusion that section 645.021 can only apply to special laws and that reference to it in two general laws, Minn.Stat. §§ 423A.04 and 423A.05, was a legislative mistake and can be disregarded. This conclusion ignores that the legislature undoubtedly knew section 423A.04 was a general law but still referred to section 645.021 not only in establishing its effective date but also in its subsequent clarification, Minn.Stat. § 423A.05. It also ignores the basic maxim of statutory construction that a statute is to be construed, if possible, so that no word, phrase, or sentence is superfluous, void, or insignificant. *Beltrami County v. Hennepin County*, 264 Minn. 406, 119 N.W.2d 25 (1963).

■ We instead conclude that the legislature's reference to section 645.021 indicates that it viewed *selection of a benefit change under section 423A.04* as comparable to a special law—both apply to one municipality and need local approval to be effective—and wanted to monitor selection of benefit changes in the same manner it monitors approval of special laws. Consistent with this, our interpretation of these references to section 645.021 is that they required a municipality to notify the secretary of state of the original selection of, and subsequent changes in, an alternative benefit by the first day of the next regular session of the legislature occurring after a particular benefit change was approved. Because the city filed a certificate of approval of its December 14, 1981, amended

resolution with the secretary of state on January 5, 1982, the amended resolution complied with relative time limits.

■ 2. Minnesota Statute § 423A.05, enacted in 1982, prohibits a municipality from amending, modifying, or revoking approval of an alternative benefit increase previously adopted pursuant to section 423A.04.[6] Relief Association claims that this section should be applied retroactively to invalidate Duluth's amended resolution, which undisputedly amended the city's original alternative benefit increase.

Retroactivity is governed by Minn.Stat. § 645.21 (1982), which provides that "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." *Id.* Nothing in the language of section 423A.05 clearly indicates that it was intended to have retroactive application. Contrary to Relief Association's claim, labeling the statute "CLARIFICATION OF INTERPRETATION ON AUTHORITY TO APPROVE ALTERNATIVE BENEFIT INCREASE" indicates nothing more than an intent to clarify the statute's meaning for future application. Section 645.21 requires that there be much clearer evidence of retroactive intent in the statute's language—such as mention of the word "retroactive"—before we determine that a statute was intended to be applied retroactively.

■ 3. Relief Association next argues that section 423A authorizes only increases in benefits and, therefore, that the benefit decrease effected by the 1982 amendment was unauthorized by law. As support, Relief Association cites language in the preamble to the original enactment of section 423A, stating it was intended to provide "an increase in retirement benefits * *

**6.** Minn.Stat. § 423A.05 (1982), provides:

    No provision of Minnesota Statutes, Section 645.021, or Laws 1980, Chapter 607, Article XV, Sections 7 or 25, shall be construed as authorizing any municipality which approved an alternative benefit increase for a local police or salaried firefighters relief association located in the municipality and which complied with Minnesota Statutes, Section 645.021, Subdivision 3, to amend, modify, or revoke that approval or substitute a different alternative benefit increase for the alternative benefit increase which was previously approved.

while not diminishing or impairing any retirement benefits of any persons."

Nothing in the language of section 423A prior to the 1982 enactment of section 423A.05 indicates that an alternative benefit increase could not subsequently be decreased. The language cited by Relief Association evidences no more than that an objective of the legislation was to provide an overall increase in pre-1980 retirement benefits for police and fire personnel in municipalities agreeing to include new police and fire hirees under the PERA pension system; since active Relief Association members still receive pension benefits $20 per month more than the pre-1980 amounts, this legislative intent has been satisfied.

We similarly reject Relief Association's argument that because provisions of section 423A authorize increases in benefits to "members" of local relief associations, and a relief association "member" is defined by Minn.Stat. § 69.27 (1982), as an active firefighter, then benefits under the statute cannot be spread to retired firefighters. Nowhere in section 423A is the term "members" defined or the definition in section 69.27 adopted. In addition, use of the terms "members," "retired members," and "active members" throughout section 423A is too inconsistent to indicate anything more than legislative recognition that Relief Associations serve two classes of members, active and retired.[7] This inconsistent use of the terms, combined with the importance of the distinction urged by Relief Association and the legislature's failure to clarify it or even define the term "members," leads us to conclude that benefit increases were not intended to be limited to active members.

7. The language of section 1(c) of the preamble, cited by Relief Association as supporting its view, further evidences this inconsistent use. In its entirety, it states that the intent and purpose of the act was to provide "[a]n increase in retirement benefits *to members* of local police and salaried firefighters relief associations under certain conditions while not diminishing or impairing any retirement benefits *of any persons*

4. Relief Association finally contends that based upon our decision in *Christensen v. Minneapolis Municipal Employees Retirement Board*, 331 N.W.2d 740 (Minn.1983), the amended resolution is unconstitutional because it impairs contractual rights active firefighters have in maintaining the established level of their future retirement benefit. *Christensen* is inapposite, however, because there we found a contractual right based upon promissory estoppel, *id.* at 749–50, whereas in this case the record contains neither evidence that the city council promised to maintain active members' benefits at the same level nor that Relief Association's active members detrimentally relied upon such a promise. We therefore affirm the trial court's determination that Relief Association has failed to establish a contractual right in maintaining a specific benefit level based upon promissory estoppel theory, or any other theory, and that the amended resolution does not unconstitutionally impair any existing contractual right.

Affirmed.

who are *members of local police and salaried firefighters relief associations, either active or retired."* Act of April 23, 1980, ch. 607, art. XV, § 1(c), 1980 Minn.Laws 1160, 1299 (emphasis added). It is unclear whether "active or retired" modifies "members" in each instance it was used or whether "members" refers to only active members in its first use but to both when it is used a second time.