Don LEVIN, petitioner, Appellant,

v.

C.O.M.B. CO., Respondent.

No. C1–88–641.

Supreme Court of Minnesota.

June 16, 1989.

**802**

David W. Larson, Jaymes D. Littlejohn, David W. Larson & Assoc., Minneapolis, Richard Meshbesher, Hopkins, for appellant.

Robert R. Weinstine, Stephen B. Young, Winthrop & Weinstine, St. Paul, for respondent.

COYNE, Justice.

Appellant Don Levin obtained review of a court of appeals decision affirming summary judgment on Levin's claim for unpaid commissions due pursuant to an employment contract with respondent C.O.M.B. Co. Judgment was granted summarily on alternative grounds: as a matter of law, either Levin's claim for unpaid commissions was barred by the two-year statute of limitations or the contract had been rescinded. We reverse and remand for further proceedings.

In June 1979 Levin and C.O.M.B. entered into a two-year employment agreement. The agreement provided that for his services as C.O.M.B.'s advertising director Levin should receive an annual salary of $30,000 plus a monthly commission of 1% of the gross sales of certain products sold by C.O.M.B. At the end of the two-year term, the agreement was to renew automatically for successive terms of one year absent written notice of termination 30 days prior to the expiration of the initial or any renewal term. When the 1979 agreement expired in June 1981, it automatically renewed on the same terms and conditions for a period of one year.

In September 1981 C.O.M.B. president Dennis Carlson, vice president Clinton Shaver, and Levin met to discuss the compensation element of Levin's contract. After the meeting Levin informed the chief financial officer of the company that effective September 1, 1981 he was to be compensated pursuant to a new plan: Levin was to receive ½% of C.O.M.B.'s total sales with a guaranteed annual minimum of $75,-000. Put another way, Levin's compensation was to be $75,000 per year plus ½% of all sales in excess of $15 million.

The parties disagree about the provisions of the 1981 compensation plan. Levin asserts that the change went only to the way the commission was to be computed. C.O.M.B. contends that the 1981 plan put Levin on an annual salary and phased out the commission entirely after payment of a commission or bonus for the 1981–82 contract year. (The record does not disclose the closing date of the corporate fiscal year, whether the company's fiscal year and the employment contract year coincide, or even whether the contract year was changed by the September 1981 revision. Consequently, for purposes of this opinion we have assumed that the fiscal year and the contract year end on August 31.)

C.O.M.B. also alleges that in November 1982 Levin was given a check representing ½% of the gross sales over $15 million for the year ending August 31, 1982, with the understanding that he would no longer be paid any commission. Levin denies this meeting took place and asserts that the meeting to resolve his 1981–82 commission was held in January 1983 although he did not receive payment of the commission until June of 1983.

Levin did not receive a commission payment for the year ended August 31, 1983. Neither did he request payment until August 1984, 11 months after close of the 1982–83 contract year, when he wrote a note to Shaver inquiring about his commission payment. Shaver did not respond, but later that month Carlson discussed the matter with Levin. Levin said the "thrust" of Carlson's message was that "there would be no bonus commissions above my base pay in the future and no payment of back commissions * * *." Levin made no further inquiry into either the subject of commission for the 1983–84 contract year or the terms of the renewal contract for the year beginning September 1, 1984, or any subsequent renewal. In January 1986, following an annual performance review, Levin's annual salary was reduced from $75,000 to $40,000.

Levin commenced this action in October 1986. C.O.M.B. moved for summary judgment on alternative grounds: Levin's claim was barred by the two-year limitation set by Minn.Stat. § 541.07(5) (1988), and the parties rescinded the commission element of Levin's employment contract in 1982. Levin argued that his claim was not barred, relying in part on the exception contained in section 541.07(5) extending the limitation period to three years for willful nonpayment of wages. He also disputed the claimed rescission. The trial court ruled that Levin's cause of action had accrued not later than August 1984 and that it was barred by the two-year limitation provided by section 541.07(5). The trial court ruled, in the alternative, that the commission element of the contract had been rescinded. Concluding that, as a matter of law, C.O.M.B.'s conduct was not "willful" within

the meaning of section 541.07(5), the court of appeals affirmed the trial court's determination that Levin's claim was barred by the two-year limitation and declined to address the question of rescission.

■ Both the trial court and the court of appeals took the position that Levin's claim for unpaid commissions, a form of wages, accrued not later than August 1984. Certainly, Levin's claim for unpaid commissions for the year ending August 31, 1983, could not have accrued later than August 1984, but Levin's claim is not limited to commissions for a single year. Levin's complaint alleges as well nonpayment of commissions based on sales made during the year ending August 31, 1984, the year ending August 31, 1985, and the period beginning September 1, 1985 and ending June 4, 1986, and from June 4, 1986 forward; and Levin's cause of action with respect to each contract period could not have accrued prior to the close of the period. A cause of action accrues when the right to institute and maintain a lawsuit arises, when the action can be brought in a court of law without dismissal for failure to state a cause of action, *Dalton v. Dow Chemical Co.*, 280 Minn. 147, 158 N.W.2d 580 (1968), and it has long been settled that a cause of action for breach of contract accrues on the breach of the terms of the contract. *Bachertz v. Hayes–Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937). Levin complains of a series of breaches, repeated failures to pay commissions in excess of the annual guaranteed minimum compensation, each of which breaches could have occurred only at the close or at some date after the close of a contract year. Thus, Levin asserts separate causes of action with different accrual dates.

Based on their conclusion that Levin knew or should have known in August 1984 that he would receive no further commissions, the lower courts accelerated accrual of all of Levin's claims to August 1984. It has long been established, however, that the renunciation and repudiation of a contract by one of the parties does not set the statute of limitation in motion against the

other party although it gives the latter an election to sue immediately. *Wold v. Wold,* 138 Minn. 409, 415, 165 N.W. 229, 231 (1917). Furthermore, the verbal denial of the existence of a contract or a declaration of an intention not to comply with its terms prior to the time the declarant must perform does not set the statute of limitations running against the other party. *Matteson v. Blaisdell,* 148 Minn. 352, 355, 182 N.W. 442, 443 (1921). Accordingly, the bar of the statute depends on the annual due date for payment of the commission. *See Honn v. National Computer System, Inc.,* 311 N.W.2d 1, 2 (Minn.1981); *Roaderick v. Lull Engineering Co.,* 296 Minn. 385, 388, 208 N.W.2d 761, 763 (1973).

▮ Since, unfortunately, the 1981 amendment of the employment contract does not fix a due date for payment of the unguaranteed portion of commission, the date on which the statute commences to run is not discernible on the record before us, so the due date, based on a reasonable time after close of the contract year for calculation of the amount of commission, is a question of fact which cannot be summarily resolved. *Ylijarvi v. Brockphaler,* 213 Minn. 385, 392, 7 N.W.2d 314, 319 (1942).

The limitation of time for commencement of Levin's action is found in Minn.Stat. § 541.07(5) (1988):

Except where the uniform commercial code or this section otherwise prescribes, the following actions shall be commenced within two years:

&ast; &ast; &ast; &ast; &ast; &ast;

(5) For the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties except, that if the employer fails to submit payroll records by a specified date upon request of the department of labor and industry or if the nonpayment is willful and not the result of mistake or inadvertence, the limitation is three years. (The term "wages" means all remuneration for services or employment, including commissions and bonuses and the cash value of all

remuneration in any medium other than cash, where the relationship of master and servant exists and the term "damages," means single, double, or treble damages, accorded by any statutory cause of action whatsoever and whether or not the relationship of master and servant exists);

*See Portlance v. Golden Valley State Bank,* 405 N.W.2d 240 (Minn.1987). It is apparent that the viability of Levin's claims depends not only on whether the annual due date for payment of any commission was before or after October 16th (the action was commenced on October 16, 1986) but also on whether the applicable limitation is two years or three years. Any commission payable before October 16, 1983 is barred by section 541.07(5). Any commission payable after October 16, 1983, and before October 16, 1984, is barred only if the applicable limitation period is two years. *See Roaderick,* 296 Minn. at 388, 208 N.W.2d at 763; *Honn,* 311 N.W.2d at 2.

The three-year limitation period is an exception engrafted onto the ordinarily applicable two-year limitation by Act of May 2, 1984, ch. 608, § 4, 1984 Minn. Laws 1450, 1454. While C.O.M.B. argues that the legislative history of the 1984 amendment reveals an intention to enlarge the limitation period only for the commencement of civil claims for violations of the Minnesota Fair Labor Standards Act, we do not consider the statute susceptible to that construction. Long before the 1984 amendment this court declined to restrict the application of section 541.07(5) to statutory wage claims. *See Kohout v. Shakopee Foundry Co.,* 281 Minn. 401, 162 N.W.2d 237 (1968). Moreover, in unambiguous terms the conditions which invoke application of the three-year exception are cast in the disjunctive: "if the employer fails to submit payroll records by a specified date upon the request of the department of labor and industry *or* if the nonpayment is willful and not the result of mistake or inadvertence &ast; &ast; &ast; &ast; " Minn.Stat. § 541.07(5) (emphasis supplied). The first condition no doubt is applicable to statutory wage claims; the

second, however, refers only to the nonpayment of wages and makes no reference to the Minnesota Fair Labor Standards Act.

 Whether there has been "willful" nonpayment of wages within the meaning of section 541.07(5) is not in this case amenable to summary disposition. We are of the opinion that in this context "willful" means the intentional and deliberate breach of an obligation to pay agreed upon wages. No doubt C.O.M.B. intentionally refused to pay Levin any commission after the 1982–83 contract year. But whether the nonpayment signified (1) that C.O.M.B. deliberately dishonored its contractual obligation or (2) that C.O.M.B. inadvertently failed to pay the commissions because it misunderstood the extent of its contractual obligation or (3) that C.O.M.B. simply had no obligation to pay the commissions after the 1981–82 contract year is a disputed material fact.

That only the first of these three alternatives would constitute a willful nonpayment of wages and thus extend the limitation of the time for commencement of an action for unpaid wages reveals a unique characteristic of section 541.07(5). Unlike other statutes of repose, which are designed to dispose of stale claims summarily, the two tiered limitation provided in section 541.07(5) seems almost certainly to demand submission of the question of willfulness to the fact finder so that it can be decided which limitation, two years or three, is applicable. As a result, whenever there is a possibility the claim accrued more than two years prior to commencement of the action, liability and damages may well be decided before the court can rule on the plaintiff's right to bring the action.

 As an alternative basis for summary judgment the trial court ruled that the agreement for payment of a commission had been rescinded. The court of appeals did not address the issue. It is true, of course, that a repudiation by one party to a contract, if acquiesced in by the other party, is tantamount to a rescission. Whether a contract has been rescinded by mutual consent is, as a general rule, a question for the trier of fact; but, as we have previously noted, "mutual abandonment, cancellation or rescission must be clearly expressed, and acts and conduct of the parties to be sufficient must be positive, unequivocal, and inconsistent with the existence of the contract." *Desnick v. Mast,* 311 Minn. 356, 365, 249 N.W.2d 878, 884 (1976). *See also Country Club Oil Co. v. Lee,* 239 Minn. 148, 154, 58 N.W.2d 247, 251 (1953). Here the terms of the compensation plan of 1981—whether they contemplated a commission on total sales with an annual guaranteed minimum or a fixed annual salary augmented for the 1981–82 contract year only by a bonus based on total sales—are sharply disputed. If the 1981 contract did in fact provide a commission with an annual guaranteed minimum of $75,000, the mutuality of a rescission of any compensation in excess of $75,000 is in equally sharp dispute. In the face of these contested facts we are not prepared to hold that as a matter of law a man who had performed services pursuant to the 1981 contract for the 1982–83 contract year and 11 months of the 1983–84 contract year acquiesced in his employer's repudiation of the contract in August 1984.

Reversed and remanded for further proceedings.