MEDTRONIC, INC.

v.

Gary J. SHOPE.

No. 99–CV–880 JMRFLN.

United States District Court, D. Minnesota.

March 19, 2001.

William Zane Pentelovitch, Jonathan Seder Parritz, Cynthia Frank Gilbertson, Kai H Richter, Maslon Edelman Borman & Brand, Minneapolis, MN, for Medtronic, Inc., plaintiff.

Andrew E Tanick, Rider Bennett Egan & Arundel, Minneapolis, MN, Gerald T Laurie, Laurie & Laurie, St. Louis Park, MN, for Gary J Shope, defendant.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on cross-motions for summary judgment. The facts are not in dispute, and the matter turns on a pure question of law. Accordingly, this case is ripe for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### I. *Factual Background*

The relevant facts are few and brief. Plaintiff, Medtronic, Inc., employed defendant, Gary Shope, to sell sophisticated medical technology. Although defendant was well compensated for his work, plaintiff wished to further compensate him, and at the same time attempt to dissuade him from leaving his job. In order to do, plaintiff gave defendant restricted stock awards from 1990 to 1994. The stock, however, was not given to defendant outright. The stock certificates were issued in defendant's name, and granted him most of the normal rights associated with stock ownership, such as the right to vote the shares and to dividends, but defendant did not have the right to transfer the stock immediately. Instead, the certificates were held by plaintiff's transfer agent for a period of five years (the "restricted period"), after which they were to be released to defendant.

Plaintiff's plan failed, however, and in 1994, prior to the end of the restricted period for any of the stock certificates, defendant left Medtronic to join a competitor's sales force. Upon learning of defendant's defection, plaintiff promptly canceled the stock certificates. Defendant was well aware of the cancellation, and used the loss of the restricted stock to negotiate additional compensation from his new employer. Almost five years passed until the next occurrence, which triggered this lawsuit.

In the interim, Harold Strandquist, one of defendant's former fellow-employees, pursued a legal action in Minnesota state court against plaintiff for the cancellation of his stock certificates, which had been canceled for reasons analogous to those above. The state trial and appellate courts both found the cancellation of Strandquist's certificates to be improper, and ordered plaintiff to award Strandquist the shares which were to accrue to him at the end of the restricted period. *See Strandquist v. Medtronic, Inc.,* 1997 WL 714742 (Minn.Ct.App. Nov.18, 1997). Defendant, having learned of Strandquist's successful litigation, contacted plaintiff and asked for delivery of his stock certificates.

Rather than award the certificates to defendant, plaintiff filed this action, seeking a declaration that defendant is not entitled to the stock certificates, and that even if he is, his action falls beyond the applicable statute of limitations. Defendant replies that his action is timely, and claims plaintiff is collaterally estopped by the *Strandquist* decision from challenging his entitlement to the certificates.

## II. *Analysis*

Defendant begins his defense by asserting that all but one of plaintiff's arguments—the statute of limitations—have been previously considered and rejected by the *Strandquist* court and cannot be resurrected here. The Court need not reach the challenging collateral estoppel question, however, because the statute of limitations issue is dispositive of the matter and raises an insuperable bar to defendant's claim to the Medtronic stock.

■ The Minnesota legislature has enacted a two-year statute of limitations for all actions "for the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties." Minn.Stat. § 541.07(5). The statute carefully defines "wages" to mean "all remuneration for services or employment, including commissions and bonuses and the cash value of all remuneration *in any medium other than cash,* where the relationship of master and servant exists." *Id.* (emphasis supplied).

The stock certificates defendant seeks constitute compensation given to him by plaintiff "in recognition of [his] performance." Def. Mem. Opp. S.J., at 2. The Court, therefore, finds this action to recover the certificates an action for the recovery of wages governed by Minn.Stat. § 541.07(5), and subject to the statute's two year limitations period. *Id.*[1] Because defendant did not seek relief for plaintiff's cancellation of the certificates until almost five years after the cancellation, his action is barred by the statute of limitations.

■ Defendant acknowledges he initially received the stock certificates as a form of compensation for his performance as an employee, but claims he "is not suing [plaintiff] for lost wages, i.e., to get an award of restricted stock in exchange for services rendered; he is suing [plaintiff] ... for its breach of its contractual obligation to remove all restrictions and release the stock to [him] in June 1999." Def. Mem. Opp. S.J., at 8. Defendant thus characterizes his claims as ones for breach of contract and conversion, subject to Minnesota's more liberal six-year statute of limitations. *See* Minn.Stat. § 541.05. The Court finds this contention to be con-

---

1. The statute provides an additional year for actions alleging willful nonpayment. The parties' briefs do not address the question of willfulness. Notwithstanding this fact, defendant's failure to seek relief for the cancellation of his certificates until almost five years thereafter places this matter well beyond even this extended limitations period.

trary to established precedent and rejects it.

The Eighth Circuit Court of Appeals has recognized that "Minnesota courts have applied ... [the recovery of wages] statute broadly: 'all damages arising out of the employment relationship are subject to the two-year statute of limitations set forth in Minn.Stat. § 541.07(5).'" *Adamson v. Armco, Inc.,* 44 F.3d 650, 652 (8th Cir. 1995) (quoting *Stowman v. Carlson Cos.,* 430 N.W.2d 490, 493 (Minn.Ct.App.1988)). It is clear that defendant's entitlement to the stock certificates—if any he has—arose out of his employment with Medtronic.

■ The stocks were unquestionably given to defendant as a reward for past performance and as an incentive for future services. Thus, defendant's purported breach of contract action arises out of the master-servant relationship, placing it squarely under the control of Minn.Stat. § 541.07(5).[2] That defendant casts his claim in the language of contract is irrelevant; the two-year statute of limitations applies "in contract actions for unpaid [employment] benefits." *Cavegn v. Twin City Pipe Trades Pension Plan,* 223 F.3d 827, 830 (8th Cir.2000).[3]

Nor does the fact that the stock certificates may have been controlled by a separate contract alter the Court's analysis.[4]

*See Kulinski v. Medtronic Bio–Medicus, Inc.,* 112 F.3d 368 (8th Cir.1997). In *Kulinski,* the Eighth Circuit Court of Appeals considered the proper statute of limitations to apply to an action brought by an employee to recover severance benefits under a "golden parachute" contract. The employee, understandably, argued for the six-year contract statute of limitations. Although Kulinski's severance benefits were due under a separate contract, and were sought subsequent to the termination of employment, the Eighth Circuit found the employee's damages stemmed from the employment relationship and were therefore subject to the two-year limitations period of Minn.Stat. § 541.07(5).

The determination that defendant's claim falls under the "consistently broad construction given to § 541.07(5)," *Kulinski,* 112 F.3d at 371, does not end the inquiry. Defendant asserts his action is timely, even under § 541.07(5), because plaintiff did not breach its obligation to transfer the stock certificates to him until 1999, when the restricted period ended. Defendant argues that the cancellation of his certificates in 1994 was only an anticipatory repudiation of his future rights, and did not give rise to his cause of action.

Defendant's argument misapprehends both the facts and the law. First, it is clear plaintiff's cancellation of the stock certificates affected a good deal more than

---

2. Defendant also contends his claim "arises from the parties' contractual relationship which arose *after* he received his compensation," Def. Mem. Opp. S.J., at 8, and that it cannot, therefore, be a claim for wages. As noted, Minnesota courts construe § 541.07(5) broadly, applying it to all claims "arising out of" the employment relationship—not just those arising during that relationship. The Court considers the timing of the contract formation to be irrelevant.

3. Defendant's assertion that his conversion claim may survive separate from his contract claim is unavailing. Whether denominated

breach of contract or conversion, the underlying harm is the same: the alleged failure by plaintiff to pay defendant compensation for services rendered. Defendant may not, by artful pleading, escape the reach of the statute of limitations.

4. The parties disagree as to whether the stock certificates were properly awarded due to defendant's failure to sign a "stock award agreement." The Court will assume *arguendo* that the stock issuance took place pursuant to a properly formed contract.

defendant's future rights. His "ownership" during the restricted period gave defendant the right to vote the shares and to receive dividends from them. Those were present rights, which defendant absolutely lost when plaintiff canceled the shares.

More importantly, defendant is incorrect on the law. In support of his argument, defendant relies principally upon *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801 (Minn.1989). He claims *Levin* stands for the proposition that "a declaration of an intention not to comply with [a contract's] terms prior to the time the declarant must perform does not set the statute of limitations running against the other party." *Id.* at 804. Defendant is half right: the proposition is correct; his application of it to these facts is not.

When plaintiff canceled the stock certificates, it did not merely declare an intention to decline to perform a future contractual duty; the cancellation was an affirmative breach of plaintiff's duty to hold the certificates in trust for defendant until 1999. Plaintiff's act deprived defendant of any right to vote the shares or receive their dividends, and also of any realistic hope of receiving the unrestricted stock in the future. The cancellation was, without a doubt, a breach of contract. And defendant knew it. He used this loss to obtain a compensating sum from his new employer when he jumped from plaintiff's staff. It is black-letter law that "a cause of action for breach of contract accrues on the breach of the terms of the contract." *Levin,* at 803.

Plaintiff's cancellation of the stock certificates is precisely the kind of "dramatic breach, which completely severed the contractual relationship" that begins the running of the statute of limitations. *See Griffin v. American Motors Sales Corp.,* 618 F.Supp. 455, 460 (D.Minn.1985). Any cause of action defendant had for breach of contract accrued upon cancellation of the stock certificates in 1994. Accordingly, defendant's claims for remuneration are now stale.

### III. *Conclusion*

The stock certificates issued to defendant constitute wages within the meaning of Minn.Stat. § 541.07(5). When plaintiff canceled those stock certificates, the limitations period for an action to recover them began running. Although defendant was aware of the cancellation, he took no action until almost five years later—far outside the limitations period. Defendant's action is thus time-barred under Minnesota law. Accordingly, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted.

2. Defendant's motion for summary judgment is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.