Lawrence A. JACOBSON,
et al., Appellants,

v.

BOARD OF TRUSTEES OF THE
TEACHERS RETIREMENT ASSOCI-
ATION, an Agency of the State of
Minnesota, et al., Respondents.

No. CX–00–2097.

Court of Appeals of Minnesota.

May 29, 2001.

Joseph T. O'Neill, Elizabeth I. Goodpaster, Michael D. O'Neill, O'Neill, Grills & O'Neill, P.L.L.P.; and Stewart C. Loper, Mary F. Seymour, Loper & Seymour, P.A., St. Paul, MN, (for appellants).

Mike Hatch, Attorney General, John S. Garry, Jon K. Murphy, Assistant Attorneys General, St. Paul, MN, (for respondents).

Considered and decided by WILLIS, Presiding Judge, AMUNDSON, Judge, and HUSPENI, Judge.

## OPINION

DORIS OHLSEN HUSPENI, Judge.*

Appellants, members of the Teachers Retirement Association (TRA), challenge dismissal by the district court under Minn. R. Civ. P. 12.02(e) of their action against respondents State of Minnesota and the TRA Board of Trustees. The district court determined that the six-year statute of limitations on appellants' claims of unconstitutional impairment of contract, denial of equal protection, common law breach of contract, promissory estoppel, and unjust enrichment had begun to run as of the effective date of 1989 statutory amendments, which substantially changed or modified appellants' pension plans, not on the dates when appellants retired and began to collect their pensions. Because the district court correctly determined that the six-year statute of limitations had run on all of appellants' claims, we affirm the rule 12 dismissal.

## FACTS

Appellants are TRA members who taught during the 1968–69 school year and who have already retired or will retire on January 1, 1998, or thereafter. When they first became employed as teachers, only one pension fund was available, the "improved money purchase" (IMP) program.

In 1969, the legislature passed the Teachers Retirement Improvement Act of 1969, which made several other pension funds available to TRA members. *See* 1969 Minn. Laws ch. 485, §§ 1–41. TRA members were offered the opportunity to select from five programs, each of which required increased contributions from the employing school districts and TRA members. Those programs included (1) IMP,

(2) a formula and three variable annuity; (3) a combined IMP and variable annuity; (4) a combined formula and variable annuity; and (5) a total variable annuity.

TRA members were required to return a signed election form before July 1, 1972, indicating their choice of program under which their benefits at retirement would be calculated. The Act specifically provided that a member's acceptance of one of the programs, once made, "cannot be revoked or changed." 1969 Minn. Laws ch. 485, § 12, subd. 3. If a member did not return an election form, he or she automatically remained in the existing IMP program. Each of the appellants here completed and timely returned an election form sometime prior to July 1, 1972.

Subsequent statutory amendments to the Act altered and eventually eliminated the variable annuity programs, as follows.

In 1973, statutory amendments changed the formula program from a career average salary computation to a computation based on the average of a teacher's highest five consecutive salaries. 1973 Minn. Laws ch. 728, § 10, subd. 7. These 1973 amendments included a savings clause for teachers who had chosen to remain in the IMP program, to allow them to choose, upon retirement, benefits under the IMP or the formula program, whichever are larger. 1973 Minn. Laws ch. 728, § 27.

In 1974, statutory amendments transferred teachers in the three variable annuity programs into a single program that was half variable annuity and half formula. The amendments further provided that all other teachers rendering service after June 30, 1972, were covered by the formula program. 1974 Minn. Laws ch. 289, § 15.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

In 1978, amendments provided that teachers in the variable annuity program would have their future contributions invested in the formula program, instead of the variable annuity program, unless they elected, by June 30, 1978, to continue in the variable annuity program. 1978 Minn. Laws ch. 781, § 7.

Finally, in 1989, amendments transferred past contributions and earnings of teachers in the variable annuity program to the formula program and closed the variable annuity fund. 1989 Minn. Laws ch. 319, art. 9, §§ 1–6. These amendments, which eliminated the variable annuity program and its funding, were effective June 30, 1989. *Id.*

Appellants brought this action against the state and the TRA board on July 10, 2000. Their complaint alleges that they held certain irrevocable contract rights, as created by the 1969 Act, and that respondents' subsequent legislative amendments to that Act amounted to impairment of contract, denial of equal protection, common law breach of contract, promissory estoppel, and unjust enrichment. In particular, appellants challenge respondents' conversion of their variable annuity program, which was a primarily stock market-based "defined contribution" pension program, to the formula program, which is an entirely "defined benefit" pension program based on a teacher's salary and years of service. Appellants further challenge the addition of penalties for early retirement, which were not part of their original irrevocable contracts. Appellants finally allege that the 1973 amendments violated equal protection by creating disparate treatment between those who made no choice during the election period and those who made an election, by giving those who made no election a choice between two pension programs at retirement: the IMP program or the formula program.

## ISSUES

1. Did the district court err in determining that appellants' breach of contract claims are barred because not brought within six years after those claims accrued?

2. Did the district court err in determining that appellants' equal protection claims are barred under the six-year statute of limitations?

## ANALYSIS

 On review of this judgment dismissing appellants' claims under Minn. R. Civ. P. 12.02(e), we take the facts alleged in appellants' amended complaint as true. *Pederson v. American Lutheran Church,* 404 N.W.2d 887, 889 (Minn.App.1987), *review denied* (Minn. June 30, 1987). Because dismissals under rule 12.02(e) are generally disfavored, a reviewing court will not uphold such a dismissal if "it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Martens v. Minnesota Mining & Mfg. Co.,* 616 N.W.2d 732, 739–40 (Minn.2000) (quotation omitted). A motion to dismiss may be proper, however, when it is clear and unequivocal from the face of the complaint that the statute of limitations has run on all the claims asserted. *Pederson,* 404 N.W.2d at 889.

 Issues involving the construction and application of statutes of limitations are questions of law, which appellate courts must review de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998). "Courts have no authority to extend or modify statutory limitations periods." *Johnson v. Winthrop Laboratories Div. of Sterling Drug, Inc.,* 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1971) (citation omitted).

### I.

Appellants' claims alleging breach of contract, promissory estoppel, unjust enrichment, and impairment of contract all rest on the same facts, and all are governed by a six-year statute of limitations. Minn.Stat. § 541.05, subd. 1(1), (2), (5) (2000) (actions on express or implied contracts, on liabilities created by statute, or for any other injury to rights of another, not arising on contract and not enumerated elsewhere, must be commenced within six years). The question we must answer here is "when did the six years begin to run?"

■ The statute of limitations begins to run when "the cause of action accrues." Minn.Stat. § 541.01 (2000).

A cause of action accrues when the holder of the right to bring the action can apply to the court for relief, and is enabled to commence proceedings to enforce his rights, and from this time the statute of limitations is running.

*Everett v. O'Leary*, 90 Minn. 154, 157, 95 N.W. 901, 902–03 (1903) (citations omitted).

■ "A cause of action for breach of contract [generally] accrues at the time of the alleged breach." *Pederson*, 404 N.W.2d at 889 (citation omitted). This is true even when actual damages resulting from the breach do not occur until some time afterwards or when the aggrieved party was ignorant of the facts constituting the breach. *Bachertz v. Hayes–Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937); *Weston v. Jones*, 160 Minn. 32, 36, 199 N.W. 431, 433 (1924).

Appellants argue, first, that their contract claims did not accrue until they retired and applied for pension benefits, citing *Butler v. Minneapolis Police Relief Ass'n*, 283 Minn. 70, 166 N.W.2d 705 (1969). We disagree. *Butler* involved a claim to receive pension benefits under statutes existing at the time the plaintiff became eligible for a pension and applied for benefits. *Id.* at 71–74, 166 N.W.2d at 706–08. Here, appellants do not seek to establish their rights to pension benefits under existing statutes; rather, they challenge changes made by the legislature to their allegedly "irrevocable" contract rights, which they claim were given them by the legislature in the 1969 Act.

In Minnesota, challenges to legislative changes to public pension plans have been characterized as claims alleging unconstitutional impairment of contract. *See, e.g., Duluth Firemen's Relief Ass'n v. City of Duluth*, 361 N.W.2d 381, 386 (Minn.1985); *Christensen v. Minneapolis Mun. Employees Ret. Bd.*, 331 N.W.2d 740, 749–52 (Minn.1983); *Sylvestre v. State*, 298 Minn. 142, 154–55, 214 N.W.2d 658, 666 (1973). In *Christensen*, 331 N.W.2d at 746–47, a retired public employee sued after his pension was discontinued pursuant to subsequent legislative acts. The supreme court expressly abandoned the "gratuity" approach that had been used in prior cases and adopted a promissory estoppel approach in its analysis of the rights of the employee in that particular case. *Id.* The court noted that even if a promise may be deemed enforceable against a public employer, that promise is still subject to modification under the state's policing power. *Id.* at 749. The court further noted, however, that the state's policing power is itself constrained by the constitutional prohibition against contract impairment, which requires that any impairments be reasonable and necessary to meet a broad and pressing social or economic need. *Id.* at 749–50.

■ To prove a claim alleging unconstitutional impairment of contract, a party must establish the existence of an underlying contract. Thus, in *Christensen*, 331

N.W.2d at 746–47, a promissory estoppel approach was used; in *Sylvestre,* 298 Minn. at 156, 214 N.W.2d at 667, the underlying contract between district court judges and the state was analyzed as a unilateral contract; and in *Duluth Firemen's Relief Ass'n,* 361 N.W.2d at 386, the retirees failed to establish any type of a contractual right in maintaining a specific benefit level. The statute of limitations was not at issue in any of these cases, however, because suit was brought in each case soon after the enactment of the challenged legislative changes.

■ When the issue before us is analyzed as one claiming unconstitutional impairment of appellant's allegedly irrevocable contract rights, we note initially that appellants do not challenge the calculation or payment of their pension benefits under the law as it exists at the time of their retirements. Rather, the gravamen of their complaint involves a challenge to the constitutionality of actions taken by the legislature between 1973 and 1989. We conclude, therefore, that any irrevocable contract rights that appellants might have had would have been breached no later than enactment of the last of the statutory amendments and that a cause of action accrued at the time of that breach. *See Pederson,* 404 N.W.2d at 889. Thus, appellants' claims accrued on June 30, 1989.

■ Appellants argue further, however, and urge that the legislative amendments amounted to an anticipatory repudiation on the part of respondents, thereby providing appellants with the option of suing immediately upon breach or waiting until respondents' performance was due, and that the statute of limitations did not begin to run until they made their election. As support for their argument, they cite *Levin v. C.O.M.B. Co.,* 441 N.W.2d 801 (Minn.1989). In *Levin,* the supreme court reversed the district courts' decisions accelerating accrual of all of an employee's claims to the date of the employer's repudiation of a commission agreement, noting that it

> has long been established * * * that the renunciation and repudiation of a contract by one of the parties does not set the statute of limitation in motion against the other party although it gives the latter an election to sue immediately.

*Id.* at 803–04 (citation omitted). The complaint filed by the employee in *Levin,* however, was similar to an installment contract and alleged a series of breaches arising from repeated failures to pay commissions, each of which occurred only at the close of a contract year. *Id.* at 803. The supreme court characterized the complaint as asserting separate causes of action with different accrual dates. Appellants' reliance on *Levin* is, we believe, misplaced.

As already discussed, appellants' complaint challenges a series of actions by the legislature, between 1973 and 1989, which they allege unconstitutionally impaired their irrevocable contract rights created by 1969 legislation. Again, as of 1989, this irrevocable contract was modified when the variable annuity program was eliminated and appellants and their contributions were transferred into the formula program. Respondents' allegedly unconstitutional act occurred when the variable annuity programs that had been chosen by appellants were eliminated, and when funding for these programs was eliminated. We cannot strain to categorize these legislative amendments as an "anticipatory repudiation" of the contract by respondents. The issue is, instead, whether the legislative amendments created an unconstitutional impairment of allegedly irrevocable contract rights. That issue could have, and should have, been raised during the six years following the last amendment.

Respondents note that, as a state agency created by the legislature, the TRA and its board may act only according to its statutory authorization and in compliance with its statutory fiduciary duties. *See Stang v. Minnesota Teachers Ret. Ass'n Bd. of Trs.,* 566 N.W.2d 345, 348 (Minn.App.1997). Thus, as of June 30, 1989, it became legally certain that the TRA and its board would be required to follow legislative mandates and eliminate the variable annuity program. *See Johnson v. Kansas Pub. Employees Ret. Sys.,* 262 Kan. 185, 935 P.2d 1049, 1053 (1997) (claim under 42 U.S.C. § 1983, by public employees alleging unconstitutional interference with contract, accrued in 1974, when legislation was enacted abolishing city's pension plan and consolidating it with county's plan and when it became legally impossible for employees to continue under city's plan); *see also Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir.1998) (impairment of contract claim under 42 U.S.C. § 1983 accrued when public employee received notice of statutory amendment that would require him to terminate his employment after participating in deferred option plan for five years, not when city actually terminated his employment).

Appellants' claims, which challenge whether respondents could constitutionally modify an allegedly irrevocable contract right to continue in the variable annuity fund, accrued at the latest as of June 30, 1989, the date on which that particular fund was eliminated and appellants' contributions were transferred into another fund. As of that date, appellants could have brought an action challenging respondents' actions. Thus, the statute of limitations ran six years after that date, or on June 30, 1995.

## II.

■ Appellants' equal protection claim is based on the 1973 amendments, which included a savings clause allowing TRA members who had chosen the IMP or who had not made an election and were deemed to continue in the IMP program, a choice between receiving benefits upon retirement based on the IMP or on the formula program. Appellants allege that this saving clause created disparate treatment between these TRA members and appellants.

■ This claim is governed by the six-year residual statute of limitations, Minn. Stat. § 541.05, subd. 1(5) (2000). A cause of action accrues under this statute of limitations when a plaintiff suffers "some" damage or when the claim is sufficiently ripe to overcome a motion to dismiss. *Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn.1999). The district court concluded that appellants' equal protection claim was sufficiently ripe to withstand a motion to dismiss no later than 1989, when the state eliminated the variable annuity program, but left untouched the 1973 savings clause, which preserved the IMP as an optional method of calculating retirement benefits for those who had chosen it during the 1969–72 election period.

Appellants argue that respondents' equal protection violation is a present, continuing one, so as to extend the statute of limitations under the continuing violation doctrine. In *Sigurdson v. Isanti County,* 448 N.W.2d 62, 67 (Minn.1989), the supreme court recognized that a discriminatory act always has some continuing consequences, but that in determining whether the continuing violation doctrine applies, the "proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." (Emphasis and quotation omitted.)

In this case, the alleged equal protection violation occurred between 1973 and 1989,

when certain TRA members were given the option, at retirement, between two different funds, while appellants were limited to a single fund. Although the consequences of these acts are "most painful" now, when it is apparent that appellant's plan has not done as well as the other plan, the creation of two classes of TRA members occurred between 1973 and 1989. We conclude that the alleged equal protection violation is thus not a continuing one so as to extend the statute of limitations.

## DECISION

The district court's determination that appellants' claims are barred by the six-year statute of limitations and its dismissal of appellants' complaint are affirmed.

**Affirmed.**