Arlyn A. HAMANN, M.D., Appellant,

v.

PARK NICOLLET CLINIC,
Respondent.

No. A10–658.

Court of Appeals of Minnesota.

Dec. 28, 2010.

David P. Jendrzejek, Michael E. Gerould, Moss & Barnett, Minneapolis, MN, for appellant.

Kerry L. Middleton, Rhiannon C. Beckendorf, Littler Mendelson, P.C., Minneapolis, MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; LANSING, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

In this action for the recovery of wages, appellant challenges the district court's dismissal of his case for failure to state a claim on which relief can be granted. Minn. R. Civ. P. 12.02(e). Appellant argues that the district court erred by (1) determining that his claims for breach of contract, promissory estoppel, and unjust enrichment are time-barred; and (2) dismissing his unjust-enrichment claim. We affirm in part, reverse in part, and remand.

## FACTS[1]

Appellant Arlyn Hamann, M.D., began his employment with respondent Park Nicollet Clinic in 1974. In 1995, Park Nicollet adopted a Length of Service Recognition Policy that applied to all physicians in Dr. Hamann's department. The policy's stated purpose was "[t]o reward length of service at Park Nicollet Clinic." Under the policy, physicians who met certain criteria would be exempt from working night call without incurring any salary reduction. The eligibility criteria required physicians to be 60 years of age, to have worked night call for at least 15 years, to work at least two-thirds of full time, and to receive the approval of all physicians in the call rotation. Park Nicollet reaffirmed the policy in 2002, and at least one physician in Dr. Hamann's department elected the policy's night-call exemption.

In spring 2004, several months before he turned 60, Dr. Hamann advised his department chair that he intended to elect the night-call exemption. At the request of the department chair, Dr. Hamann agreed to defer his exemption until April 2005 because several physicians in the department would be on maternity leave. When Dr. Hamann renewed his exemption request in April 2005, he was advised that the policy no longer existed and that he was required to work night call or his salary would be reduced. Dr. Hamann chose to continue working night call at his full salary until February 2008. When Dr. Hamann discontinued working night call for health reasons, Park Nicollet reduced his salary. Dr. Hamann continues to work for Park Nicollet.

1. Because we are reviewing the district court's decision to dismiss pursuant to Minn. R. Civ. P. 12.02(e), we accept the facts as alleged in the complaint and any documents referenced therein. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 739 n. 7 (Minn. 2000).

Dr. Hamann initiated this action on October 30, 2009,[2] claiming breach of contract, promissory estoppel, unjust enrichment, misrepresentation, and failure to pay wages. He voluntarily dismissed his claims for misrepresentation and failure to pay wages. Park Nicollet moved to dismiss the remaining claims under Minn. R. Civ. P. 12.02(e). The district court granted the motion, finding that Dr. Hamann's claims are time-barred under Minn.Stat. § 541.07(5) (2008) and that his allegations do not satisfy the elements of an unjust-enrichment claim. This appeal followed.

## ISSUES

I. Did the district court err by dismissing appellant's claims for breach of contract, promissory estoppel, and unjust enrichment as time-barred under Minn.Stat. § 541.07(5)?

II. Did the district court err by dismissing appellant's unjust-enrichment claim for failure to state a claim as a matter of law?

## ANALYSIS

### I.

On a motion to dismiss for failure to state a claim, Minn. R. Civ. P. 12.02(e), the district court may consider only the complaint and the documents referred to in the complaint. *Martens,* 616 N.W.2d at 739 n. 7. In doing so, the facts as alleged in the complaint are accepted as true, and all reasonable inferences are construed in favor of the nonmoving party. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003). The district court must "review the complaint as a whole, including the documents upon which [the plaintiff] rel[ies], to determine whether as

a matter of law a claim has been stated." *Martens,* 616 N.W.2d at 740. We review de novo the district court's decision to dismiss for failure to state a claim. *Bodah,* 663 N.W.2d at 553.

### A.

Dr. Hamann challenges the district court's decision to dismiss his claims against Park Nicollet as time-barred. The limitations period for these employment-based wage claims is governed by Minn. Stat. § 541.07(5). Although Dr. Hamann alleges that Park Nicollet's conduct was willful, which extends the limitations period from two years to three years, the district court concluded that the limitations period had expired regardless of whether it was two or three years.

An action shall be commenced within two years

for the recovery of wages or overtime or damages, fees, or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees, or penalties except, that ... if the nonpayment is willful and not the result of mistake or inadvertence, the limitation is three years.

Minn.Stat. § 541.07(5). The term "wages" is defined as "all remuneration for services or employment, including commissions and bonuses and the cash value of all remuneration in any medium other than cash, where the relationship of master and servant exists[.]" *Id.* Park Nicollet argues that the limitations period began, at the latest, in April 2005 when Dr. Hamann learned that he would not be permitted to elect the policy and thus that the three-year limitations period for the alleged will-

2. Although the summons and complaint were not filed in district court until January 5, 2010, Dr. Hamann served his summons and complaint on Park Nicollet on October 30, 2009. *See* Minn. R. Civ. P. 3.01 (stating that civil action commences on date the summons is served on defendant).

ful conduct expired in April 2008, more than one year before Dr. Hamann served the complaint. Dr. Hamann asserts that a separate breach occurred for statute-of-limitations purposes each time he was required to work night call between April 2005 and February 2008 and each pay period in which his salary was reduced after February 2008. Because Park Nicollet continues to breach the terms of the policy, Dr. Hamann argues, his claims are not time-barred.

■ "[U]nder Minnesota law, a contractual cause of action for lost wages arises each time a payment is due, but is not paid." *Guercio v. Prod. Automation Corp.*, 664 N.W.2d 379, 387 (Minn.App. 2003). This rule originated in *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801 (Minn.1989), which guides our analysis here. The plaintiff in *Levin* entered into a two-year employment agreement with his employer under which the employee would receive an annual salary plus a monthly commission. 441 N.W.2d at 802. The contract renewed automatically for successive one-year terms absent a written notice of termination. *Id.* Two years later, the employer amended the compensation plan. *Id.* Although the employee received a commission payment at the end of the first year under the amended plan, he did not receive a commission payment in subsequent years. *Id.* at 803. When the employee first inquired about the cessation of commission payments three years after the change in the compensation plan, the employer advised the employee that he would no longer receive commission payments. *Id.* Two years later, the employee brought an action to recover the unpaid commissions, which were a form of wages. *Id.* The Minnesota Supreme Court held that, although the employer's renunciation and repudiation of the contract gave the employee the right to sue immediately, the employee could elect to sue based on any

of the annual commission-payment due dates that fell within the two-year limitations period. *Id.* at 803–04.

Dr. Hamann's claims against Park Nicollet to recover his unpaid wages are governed by the legal principle set forth in *Levin.* As in *Levin,* Dr. Hamann's claims are not limited to compensation for a single pay period following Park Nicollet's repudiation of its policy. Although Park Nicollet repudiated its policy in April 2005, each pay period during which Park Nicollet failed to satisfy its obligations under the policy constitutes a separate alleged breach akin to the employer's failure to make commission payments in *Levin.*

Park Nicollet argues, and the district court held, that *Levin* is factually distinguishable because in 2005, Park Nicollet did not repudiate a future contractual duty. Relying on *Medtronic, Inc. v. Shope,* 135 F.Supp.2d 988 (D.Minn.2001), Park Nicollet maintains that, the only breach, if any, was Park Nicollet's breach in 2005 of a then-existing duty. This argument is unavailing. In *Medtronic, Inc.,* the employer issued stock certificates to its employee in 1994 and the four preceding years as compensation for his performance. 135 F.Supp.2d at 989. The certificates granted normal stock ownership rights but restricted the right to transfer the stock for five years. *Id.* When the employee left his employment, the employer immediately cancelled the certificates. *Id.* Although the employee argued that a separate breach occurred five years later when the transferability restriction would have ended, the *Medtronic, Inc.* court held that the cancellation of the stock that occurred when the employment relationship ended was the sole breach. *Id.* at 991. Therefore, the limitations period had run. *Id.* The facts in *Medtronic, Inc.* established that the employer's contractual duty was "to hold the certificates in trust for

[the employee] until 1999." *Id.* at 992. It was not a future duty to compensate the employee. *Id.* The stock certificates in *Medtronic, Inc.* constituted a single, discrete payment that the employer revoked entirely in 1994. *Id.*

The facts before us are distinguishable from those in *Medtronic, Inc.* and are more analogous to those in *Levin.* As alleged here, Park Nicollet had a future obligation to pay or provide specific benefits to Dr. Hamann at certain stated intervals for an indefinite period into the future. These benefits continued to accrue because of Dr. Hamann's continued service. Park Nicollet attempts to distinguish *Levin* because it involved an installment contract that came due only at a predetermined future date. However, fixed due dates were not a critical factor in the *Levin* court's analysis. *See Levin,* 441 N.W.2d at 804 (observing that not all commission payments had predetermined fixed due dates). Although Park Nicollet's policy did not contain specified dates of accrual, it provided a benefit linked to a regularly paid salary without a fixed end date. *Cf. Botten v. Shorma,* 440 F.3d 979, 981 (8th Cir.2006) (holding that plaintiff's claim was time-barred because the bonus payment schedule contained set end date). Our analysis also comports with the application of limitations periods to lost-wages claims in other jurisdictions. *See Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 993 n. 44 (9th Cir.2007) (discussing similar standard under California statute of limitations); *Hosking v. New World Mortg., Inc.,* 602 F.Supp.2d 441, 446 (E.D.N.Y. 2009) ("Courts have held that for the purposes of establishing the statute of limitations under the [Fair Labor Standards Act], a new cause of action accrues with each payday following an allegedly unlawful pay period." (quotation omitted)); *Lipscomb v. Tucker Cnty. Comm'n,* 197 W.Va. 84, 475 S.E.2d 84, 90–91 (1996) (citing

same standard). Because a new cause of action for the recovery of wages accrued each time a payment was due but not paid by Park Nicollet, the district court erred by granting Park Nicollet's motion to dismiss the claims as time-barred.

**B.**

■ For the first time on appeal, Park Nicollet argues an alternate basis for the dismissal, namely, that Dr. Hamann assented to the policy change by continuing to work for Park Nicollet and accepting night-call assignments for almost three years after the policy change. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983) ("[An] employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer."); *Guercio,* 664 N.W.2d at 384 (holding that contract results when employee continues employment with knowledge of changed conditions). Because this argument was neither raised in nor considered by the district court, we decline to address it here. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that appellate courts generally will not consider matters not argued to and considered by the district court).

**II.**

■ Dr. Hamann next argues that the district court erred by dismissing his unjust-enrichment claim for failure to state a claim as a matter of law. A party asserting an unjust-enrichment claim must establish that the defendant knowingly received or obtained something of value for which the defendant "in equity and good conscience should pay." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.,* 544

N.W.2d 302, 306 (Minn.1996) (quotation omitted).

■ The district court correctly determined that Dr. Hamann's pleadings do not allege a cause of action for unjust enrichment. An unjust-enrichment claim requires proof that a party "was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully," *id.*, or as a result of fraudulent inducement or unconscionable conduct, *Schumacher v. Schumacher*, 627 N.W.2d 725, 729–30 (Minn.App.2001). Park Nicollet's policy was in effect for ten years, and at least one physician elected the night-call exemption during that time. There are no allegations that Park Nicollet acted with an illegal or fraudulent motive.

Absent any allegations that Park Nicollet benefited by unlawful means or through fraudulent inducement, the district court properly dismissed Dr. Hamann's unjust-enrichment claim.

## DECISION

The district court's determination that appellant's claims are barred by the statute of limitations is reversed. The district court's dismissal of appellant's unjust-enrichment claim is affirmed. We, therefore, affirm in part, reverse in part, and remand for further proceedings on the breach-of-contract and promissory-estoppel claims.

**Affirmed in part, reversed in part, and remanded.**